STATE, ex rel. Hollywood Jockey Club, Inc., v. JOSEPH R. STEIN, et al., as and constituting The State Racing Commission, and the said JOSEPH R. STEIN as Chairman of the State Racing Commission, and the said PARKS GLOVER as Secretary of said State Racing Commission, and The STATE RACING COMMISSION.

176 So. 849.
Opinion Filed November 4, 1937.

*Valz & Wise, R. R. Saunders* and *Loftin, Stokes & Calkins,* for Relator;

*H. P. Baya,* for Respondents.

BUFORD, J.—This case is before us on motion to issue peremptory writ of mandamus, the return notwithstanding.

Alternative writ of mandamus was issued herein commanding "Joseph R. Stein, Parks Glover, Frank Rogers, S. J. Hilburn and E. A. Williams as and constituting the State Racing Commission, created by Chapter 14832. Acts of 1931, Laws of Florida, as amended by Chapter 17276,

Acts of 1935, Laws of Florida, and the said Joseph R. Stein as Chairman of said Racing Commission, and the said Parks Glover as Secretary of the said State Racing Commission, to convene as the State Racing Commission and rescind the action taken by you under September 3rd, A. D. 1937, whereby you refused to fix and set the racing dates for Hollywood Jockey Club, Inc., and thereupon to fix and set dates for horse racing at the plant owned by Hollywood Jockey Club, Inc., in Broward County, Florida, or that you show cause on September 10, 1937, or why you refuse so to do."

Motion to quash the alternative writ was filed and denied.

Thereupon, the Respondents filed their return.

The alternative writ alleges in effect that Hollywood Jockey Club, Inc. is a corporation organized under the laws of Florida; that it was heretofore granted a permit to conduct races at its plant in Broward County, Florida.

That on the 3rd day of August, 1937, such permit was duly ratified by a majority of the voters voting in said election in accordance with the law in Broward County, Florida;

That on the 3rd day of September, 1937, Hollywood Jockey Club, Inc., together with practically all other racing associations or corporations authorized to operate both horse and dog racing tracks in Florida, filed an application with the State Racing Commission for the fixing of racing dates and the granting of a license, in which application this relator requested that it be allowed to operate its horse racing track in Broward County, Florida, for a period beginning February 3rd, 1938, and ending March 24th, 1938;

That the State Racing Commission failed and refused to fix dates for racing at relator's horse racing track in Brow-

ard County, Florida, and refused to award relator a license to operate racing in Broward County, Florida;

That the relator is engaged in building a horse racing track in Broward County, Florida, and will have the same completed and ready for operation on February 1st, 1938;

That relator has the only permit for horse racing track in Broward County, Florida;

That the relator is entitled to, and it is the duty of the State Racing Commission to grant unto the relator, the dates set forth in its application and that such dates are the only dates that could be granted by said State Racing Commission to the relator in a fair and impartial manner;

That the State Racing Commission failed and refused to assign to the Hollywood Jockey Club, Inc., the racing dates requested, or any other racing dates;

That by so doing the Racing Commission violated the letter and intent of the statutes in such cases made and provided.

The writ shows that the Racing Commission at the time and place above mentioned, fixed racing dates for the operation of both horse and dog race tracks throughout the State and alleges that said Commission arbitrarily failed and refused to grant such dates to the relator.

The return which was filed here on the 4th day of October, 1937, alleges that the State Racing Commission did not arbitrarily refuse to grant to relator dates upon which to operate, but that the said Commission deferred action upon the application for such racing dates until the next meeting of the Commission and formally adjourned to convene eleven days later, on, to-wit, the 14th day of September, 1937, at Miami, Florida, for the purpose of further considering relator's application, but when this return was filed the 14th of September had long passed and affirmative ac-

tion is not shown to have been taken. It is alleged in the return that it affirmatively appears from the relator's petition that the relator was not possessed of a race track upon which it could operate, but that these respondents were advised by relator's petition that it was engaged in the building of a horse-racing track in Broward County, Florida, and it "expects to have a complete plant ready to hold race meetings" and alleges that the Commission adjourned to convene in Miami later for the purpose of fairly and impartially considering relator's petition for the granting to it of a license to conduct racing and for the setting of racing dates under said license. Yet, it does not appear that respondents have performed their duty in that regard, although the date set for the adjourned meeting is long since passed.

The statutes, Chapter 14832, Acts of 1931, as amended by Chapter 17276, Acts of 1935, do not contemplate that it should be necessary for one who has been granted a permit which has been ratified by the voters of a county to conduct a race meeting to have a completed race track and plant ready for operation at the time he applies for and is granted a license and the fixing of dates. It was not the purpose of the Legislature to require one to construct a race track or racing plant before being granted a permit to conduct the same. It was required in that regard that the location to be occupied by the race track, or racing plant, should be definitely stated. Under the plain language of sub-paragraph 6 of Section 2 and Sections 6 and 7 of Chapter 17276, Acts of 1935, it is the duty of the Racing Commission to grant to the relator a license to conduct racing and, upon the posting of the required bond, under the provisions of Section 14 of Chapter 14832, Acts of 1931, it is the duty of the Racing Commission to deliver the license to the person, firm or corporation whose permit has been granted by

the said Commission and approved by the voters in an election held for that purpose.

If a permit is issued and an election has been held and the permit ratified, the holder of the ratified permit must construct a track suitable to conduct a race meeting within twelve (12) months after ratification of a permit and unless this is done the permit becomes null and void and the Commission is authorized to cancel the permit without notice to the holder thereof. See Section 6 of Chapter 17276, *supra*.

Section 4 of Chapter 17276, *supra*, provides in part: "Any person, association or corporation desiring to operate a race track in this State shall have the right, subject to the provisions of this Act, to hold and conduct one or more race meetings at such tracks each year. Hereafter horse race track meetings shall be held only during the period extending from and including the 10th day of December in each year to and including the 10th day of April the following year and hereafter dog track meetings shall be held only during the period extending from and including the 1st day of December in each year to and including the 10th day of April the following year;"

Sub-paragraph 1 of Section 2 of Chapter 17276, *supra*, makes it the duty of the Racing Commission, "To fix and set the dates for racing in any county where there are one or more horse tracks or one or more dog tracks seeking to race and holding ratified permits upon which any track can operate in any county apportioning such dates to the several tracks in such counties in a fair and impartial manner. Provided, however, that where only one licensed dog track is located in a county, such track shall be entitled to operate ninety (90) days, during the racing season at option of said dog track."

We do not hold that this section of the Act grants to the permit-holder the right to select the dates upon which a horse racing meet will be conducted, but it does require the State Racing Commission to grant the dates within the time fixed by the Act and, while it appears that the Racing Commission may select and fix the dates for the operation of a horse racing track in any county where only one racing track is permitted, the statute requires the State Racing Commission to fix such dates in a fair and impartial manner. In doing this it is the duty of the Commission to look to the interest of the State, which receives revenue for the operation of the track, and to the interests of the permit-holder, who proposes to operate the track for profit.

Under the showing made in the writ, and which is admitted by the return, the permit-holder in this case will not be ready to operate its track before the 1st of February, 1938, because it will not have a completed racing plant before that time. But, under the law, it is entitled to have its quota of dates and it can only have that quota of days, as is shown by the pleading here, by the same being fixed from and after the 1st day of February, 1938.

It is averred in the writ, and not denied by the return, that the dates selected by the relator are "the only dates that can be granted by said Racing Commission to your petitioner in a fair and impartial manner in accordance with the law."

For the reasons stated, the return is held insufficient and the peremptory writ, notwithstanding the return, is awarded.

So ordered.

ELLIS, C. J., and WHITFIELD, TERRELL and BROWN, J. J., concur.

CHAPMAN, J., disqualified.