CALDWELL, Justice.
Relator is the owner of a permit and license authorizing it to conduct harness racing and, in connection therewith, to operate pari-mutuel pools. In June of 1966 the relator filed its application with the Florida State Racing Commission, the members of which are respondents herein, seeking the Commission’s approval of relator’s annual license to conduct harness racing at relator’s leased location, Tropical Park, on certain designated days and dates. By its order dated August 22, 1966, the Commission denied the application on the following grounds:
“This Commission is of the opinion that the Applicant is unable at this time to properly conduct harness racing at night in the leased premises wherein thoroughbred horses are stabled and racing on the same dates in the daytime because of the lack of sufficient of (sic) facilities and safeguards as the public interest demands and requires in respect of pari-mutuels operations.”
Relator contends that, under Florida Statute § 550.07, F.S.A. no discretion is vested in the Racing Commission to deny its application ; that the Racing Commission has no authority to reject relator’s application on the ground that the facilities “at this time” are insufficient for harness racing; that this particular question was resolved by the Supreme Court in State ex rel. Hollywood Jockey Club v. Stein, 129 Fla. 777, 176 So. 849 (1937), wherein on similar facts this court awarded peremptory writ of mandamus.
In the Hollywood Jockey Club case, supra, this court held :
“The statutes, chapter 14832, Acts 1931, as amended by chapter 17276, Acts 1935, [predecessor of F.S. § 550.07] do not contemplate that it should be necessary for one who has been granted a permit which has been ratified by the voters of a county to conduct a race meeting to have a completed race track and plant ready for operation at the time he applies for and is granted a license and the fixing of dates. It was not the purpose of the Legislature to require one to construct a race track or racing plant before being granted a permit to conduct the same. It was required in that regard that the location to be occupied by the race track, or racing plant, should be definitely stated. Under the plain language of subdivision 6 of section 2 and sections 6 and 7 of chapter 17276, Acts of 1935, it is the duty of the Racing Commission to grant to the relator a license to conduct racing, and, upon the posting of the required bond, under the provisions of section 14 of chapter 14832, Acts of 1931, it is the duty of the Racing Commission to deliver the license to the person, firm, or corporation whose permit has been granted by the said commission and approved by the voters in an election held for that purpose.
'A******
“Under the showing made in the writ, and which is admitted by the return, the permit holder in this case will not be ready to operate its track before the 1st of February, 1938, because it will not have a completed racing plant before that time. But, under the law, it is entitled to have its quota of dates, and it can only have that quota of days, as is shown by the pleadings here, by the same being fixed from and after the 1st day of February, 1938.”
The controlling statutory law has remained without material change since the Hollywood Jockey Club decision. Florida Statute § 550.07, F.S.A. provides in pertinent part as follows:
“After a permit has been granted by the commission, and after the same has been ratified and approved by the majority of the electors participating in such election of the county designated therein, the racing commission shall grant to the lawful holder of such permit, subject to the conditions hereof, a license to conduct rac *557 ing under this chapter, and fix annually the time, place and number of days during which racing may be conducted by such permit holder at the location fixed in said permit and ratified in said election. After the first license has been issued to the holder of a ratified permit for racing in any county, all subsequent annual applications for a license by said ratified permit holder shall be accompanied by proof in such form as the commission may require, that the ratified permit holder still possesses all the qualifications prescribed by this chapter, and that the permit has not been recalled at a later election held in such county as provided for in § 550.18. * * * ”
But respondents contend mandamus will not lie because questions of fact and a discretionary duty are involved in the issuance of a license. The authorities cited by respondents do not support that position. While it is true the Commission has discretion in the assignment of dates and in the regulation of track operations, the Commission may not deny racing days to the holder of a valid permit upon presentation of a valid application. Relator’s operations at the leased premises as well as its permanent location are, as of course, subject to regulation by the Commission.
Respondents further insist relator’s application for racing dates at its leased location does not meet the distance requirements prescribed by Florida Statute § 550.-37(7), which provides:
“Such permittee and licensee upon the approval of its application by the racing commission pursuant to the provisions of this act may conduct harness racing at the facilities or plant leased by it from any horse race permittee or licensee in any county within the authorized area designated in this act not more than forty miles from the applicanfs designated location, provided the said horse race per-mittee has a valid permit and license issued to it under the provisions of chapter 550 * * (Emphasis supplied)
Respondents urge the distance between the two locations must be measured by the most direct land road route and that, in this case, when so measured, the distance between the two points is slightly in excess of forty miles. Relator, to the contrary, asserts the distance between the locations must be measured in a straight line and, measured in that manner, is less than forty miles.
We think this question was resolved by the decisions of State ex rel. Fronton Exhibition Company v. Stein[1] and State ex rel. Fronton Exhibition Company v. Haggard [2] wherein the method of measuring such mileage under a statute not specifying either road or air miles was fixed as a straight line as required in Florida Statute § 550.05.
For the reason stated respondents’ Motion to Quash the Alternative Writ is denied, the return is held insufficient and the peremptory writ is awarded.
It is so ordered.
THORNAL, C. J., and THOMAS and DREW, JJ., concur.
ERVIN, J., concurs with opinion.

. 144 Fla. 387, 198 So. 82 (1940).

. Fla., 67 So.2d 205 (1953).