STATE *ex rel.* FRONTON EXHIBITION CO. v. JOSEPH R. STEIN, PARKS GLOVER, S. J. HILBURN, E. A. WILLIAMS and FRANK ROGERS, as and Constituting the FLORIDA STATE RACING COMMISSION, and the said JOSEPH R. STEIN, as Chairman of said Racing Commission, and the said PARKS GLOVER as Secretary of the said Racing Commission and the FLORIDA STATE RACING COMMISSION, a commission organized and existing under the laws of this State.

198 So. 82

En Banc

Opinion Filed October 8, 1940

Rehearing Denied October 29, 1940

388

*S. P. Robineau, W. G. Ward, Carl T. Hoffman* and *J. Lewis Hall,* for Relator;

*H. P. Baya* and *Richard H. Hunt,* for Respondents.

BROWN, J.—The State of Florida on the relation of Fronton Exhibition Co., a Florida corporation, relator, filed in this Court, on August 25, 1940, its petition requesting the Court to issue its alternative writ of mandamus, directed

to the respondents, who constitute the Florida State Racing Commission, together with the Secretary of said Commission requiring them to meet forthwith and rescind the resolution heretofore adopted by said Commission on August 14, 1940, whereby they granted the application of Florida Fronton Association for a permit, and to revoke the permit delivered by them to said association on August 21, 1940, in order that the relator licensee might profitably enjoy the benefit of its permit without unwarranted and illegal competition; or to show cause before this Court on a day and at a time to be fixed by the Court why a peremptory writ of mandamus should not be issued as requested by the relator. An order to show cause was duly entered by this Court on August 26 and the respondents on September 2, 1940, filed a motion to quash the rule *nisi* based upon several grounds, the substance of which are that the petition, considered in connection with the exhibits thereto attached, show that the respondent commission had performed its official functions in the premises as provided by law and that the showing made is insufficient in law to justify the issuance by this Court of a writ of mandamus as prayed for by the relator.

While there are several important questions which have been presented to this Court by counsel for the respective parties, both in their briefs and upon the oral argument which was recently had before this Court, we deem it unnecessary to consider but one of the questions thus presented, which is determinative of this cause. That question is, does the permit which was granted to the relator's competitor authorize the construction and operation of a Jai-a-Lia Fronton within one thousand feet of an existing public school?

Section 9 of Chapter 17074, of the Acts of 1935, referred to as the Jai-a-Lia Act, reads as follows:

"No permit shall be issued for the operation of any such fronton to be constructed or operated within one thousand feet of any existing Church or public school, nor shall any such exhibition be held on Sunday."

It is shown in this case that the permit granted by the respondents authorized the construction and operation of such fronton at a point less than one thousand feet from the grounds surrounding a public school, but slightly more than one thousand to the proposed location of the fronton building.

This elementary public school, located in the southern portion of Miami Beach, Florida, has grounds around the school building, enclosed by a wire fence, and the property on which said building and grounds were located is owned by the Dade County Board of Public Instruction. These grounds are apparently not as large as those recently recommended by the State Superintendent of Public Schools, because they comprise only about an acre and a half. In a bulletin issued by such officer, entitled "Report of School Analysis and Plans for Improvement, 1940-1941," it is recommended, among other things, "for attainment as quickly as local conditions permit," that the playground area should comprise, for schools of less than fifty pupils, three acres, and for schools of between fifty and ninety-nine pupils, four acres, and for schools of from one hundred to two hundred and forty-nine, five acres, and for schools of two hundred and fifty to four hundred and ninety-nine, seven acres, etc. It is further recommended that at least five per cent of the amount of play area for each school shall be in the shade of trees and at least one-half the amount

of area shall be clear and reasonably level and adequately maintained for open games.

In a bulletin or pamphlet issued by the State Department of Public Instruction, some five years earlier, on August 1, 1935, entitled "Standards for Florida Elementary Schools," on page 8, the following appears:

"Grounds and Their Equipment.

"1. Grounds attractive in appearance. Sodded grounds in front of the building, and shrubs, shade trees, and symmetrical walks are highly desirable.

"2. Adequate space for playground exclusive of lawns and gardens. It is recommended that 100 square feet of playground per child be provided.

"3. Neat waste paper receptacles provided and in constant use.

"4. A daily program of plays and games with the condition that:

"(a) Every teacher and every child must take some part in these plays and games as a regular part of his or her school work.

"(b) A written program covering these activities must be submitted to the State Department of Public Instruction for approval or disapproval along with the application for accreditation.

"(c) Necessary inexpensive physical education supplies such as balls, bats, nets, etc., be secured.

"5. If fences are provided, they must be attractive and in good repair."

It appears that at the hearing before the State Racing Commission, the Commission adopted as a method or rule of measurement for determining whether or not the proposed fronton building would be within one thousand feet of the school, that the distance should be measured on a

straight air-line from the nearest point of the school building to the nearest point of the fronton building, or vice versa, and that, so measured, they found the distance to be well over the one thousand feet required by the statute; but it appears from the exhibits attached to the petition for the alternative writ that the distance in a straight line from the nearest point of the proposed fronton building to the *school grounds* is less than one thousand feet. Therefore the question might be narrowed to the question as to whether or not, under the statute, the measurement should be made from the proposed fronton building to the *school building,* or to the *school grounds* which surround the school building, and are located on the school property, and which are used in connection with the work of the school.

In support of their motion to quash, the respondents contend that they had the power to adopt the method of measurement which they applied in this case under and by virtue of the rule-making power vested in such commission by the Racing Commission Act of 1931, Chapter 14832, Section 2, and by the Jai-a-lia Act of 1935, Chapter 17074, Section 3, paragraph 3. The language of the two Acts is quite similar. Those portions of Section 3 of Chapter 17074 which are applicable here read as follows:

"Section 3. It shall be the duty of the State Racing Commission to carry out the provisions of this Act, and to that end, such Commission shall have the power and authority to personally, or by agent, supervise and check the making of pari-mutuel pools and wagers and the distribution therefrom, and * * *

"3. To make rules and regulations for the holding, conducting and operating of exhibitions of Jai-a-lia or Pelota, which rules and regulations shall be uniform in their application and effect, and the duty of exercising this control

and power is hereby made mandatory upon such Commission."

We have held that the State Racing Commission has, under Chapter 14832, wide discretion in the exercise of the authority expressly or impliedly conferred upon it by the Legislature (State *ex rel.* Rose, 122 Fla. 413, 165 So. 347), and in the case of State *ex rel.* Allen v. Rose, 123 Fla. 544, 167 So. 21, we held that "The Legislature has vested the State Racing Commission with the power to make rules and regulations appropriate to the accomplishment of the purposes to the Act." Of course, we have never gone so far as to hold that the State Racing Commission can make any rule or regulation which violates the true intent and meaning of either of the statutes above referred to or of any other valid and enforceable statute which is applicable to the facts of any particular case.

So the question before us is primarily one of statutory construction. It is true that the statute does not prescribe how the one thousand feet mentioned in the statute shall be measured, but in the absence of anything in the statute to the contrary, we must hold that the legislative intent was that this distance of one thousand feet meant one thousand feet measured in a straight line. See Annotation in 96 A. L. R., p. 778, *et seq.*

The contention of the respondents is that in the absence of any specific legislative provision on the subject, it was left to the judgment and discretion of the Commission to determine the rule or method of measurement by which this disputed method with reference to the measurement of the distance should be determined. That had the Legislature meant by this rule that no fronton *site* should be within one thousand feet of any existing church or school *site* or *grounds,* it would have said so. That the Legislature was

informed as to the difference between a school and school grounds and school site is evident from an examination of the school code enacted at its last session wherein the Legislature said that no place detrimental to moral or physical welfare of children shall be located nearer than three hundred feet of any "school site." In the brief for respondents it is said:

"The number of methods of measuring distances is practically co-extensive with the ability of the mind of man to hypothesize upon the subject.

"These adjudicated measurement rules are most frequently encountered in cases involving the proximity of saloons, barrooms, or liquor stores to schools, churches, charitable institutions and other such buildings. Some dozen different methods of taking measurements, all of which have at one time or another been upheld by courts of last resort, are to be found in 96 A. L. R. 780 and in 33 C. J. 542. Among these are: From the nearest point of one house or building to the nearest point of the other in a straight line; from the nearest entrance of the one building to the nearest entrance of the other in a straight line; from the principal entrance of one building to the principal entrance of another in a straight line; and from the curb line in front of the entrance of one building to the curb line in front of the entrance of another in a straight line. There are cases upholding the taking of the measurement along the nearest mode of access, taking into contemplation bypaths and alleys; other cases state that the measurement should be made along the regular route of pedestrian traffic, and still others proceed from building to building along the nearest street lines. Thus the Court can readily see that the variety of methods of measuring is well-nigh *infinite,* and hence that the determination of a distance

in feet between a 'school' and a 'fronton' necessarily involves an exercise of discretion in determining the method or rule of measurement to be followed."

In support of the above contention counsel for respondents cite the following cases: Commonwealth v. Jones, 142 Mass. 573, 8 N. E. 603; State, Warren St. Chapel, Prosecutors, v. Excise Commissions, 56 N. J. L. 411, 29 Atl. 150; People *ex rel*. R. H. Macy & Co. v. Murray, 5 App. Div. 66, 38 N. S. S. 903; St. Thomas Church v. Board of Excise, 20 N. Y. S. 831; People v. Schneider, 170 Mich. 150, 135 N. W. 973; Greenough v. Warwick, 31 R. I. 559, 78 Atl. 262; *In re:* Somach's License, 83 P. L. J. 350; *In re*. Betoff's License, 36 D. & C. 32 (Penna. Quarter Sessions, 1940).

Counsel for respondents also cite the case of State *ex rel*. First Presbyterian Church of Miami v. Fuller, 136 Fla. 788, 187 So. 148, involving the business locations of liquor dealers, in which an ordinance of the City was upheld by this Court which provided that the method of measurement should be from the main entrance of the church or school to the main front entrance of such place of business, along the route of ordinary pedestrian traffic. The first headnote in that case shows that it turned largely upon the question of statutory construction. Said headnote reads as follows:

"The statutes authorizing cities and towns 'to establish zoning ordinances restricting the location wherein' licensees could conduct liquor business manifest intent to authorize cities to designate places where liquor might be sold, to regulate the dispensation thereof, and as a corollary to define terms in such ordinances. (Comp. Gen. Laws Supp. Sections 4151 (231), 4151 (240)."

A perusal of the opinion in the above case shows that it is not in point here.

Our attention is called to the case of *In re:* Liquor Regulations, 13 R. I. 733, wherein the court said: "We are also of the opinion that the word 'school' in the chapter means simply the school house and does not include the school lot or yard, and consequently that the measurement should be made from the school building."

It is furthermore contended that the measurement adopted by the respondents was reasonable because the straight air-line distance from the proposed fronton building to the existing school building was not only over one thousand feet from the closest point of one building to the closest point of the other, but that such measurement involved running a diagonal line directly across both improved and unimproved property, as well as over a heavily traveled thoroughfare.

Most of the cases cited by counsel for both the relator and the respondents appear to have been reviewed in the note following the case of Board of Trustees of Leland Stanford University v. State Board of Equalization, 37 Pac. (2nd) 84, appearing in 96 A. L. R. 775, the annotation beginning at page 775. The older cases cited by counsel are of little assistance to us in determining what the Legislature meant when it used the words "public school" in Section 9 of our 1935 statute here involved. We can take judicial cognizance of the fact that the elementary school of today is quite different from the elementary public school of a generation or so ago. The public school of recent years has made physical education and development a part of its curriculum, and as a general rule the grounds around a school are used for that purpose, as well as for ordinary play. This is entirely practicable in Florida, and in the mild semi-tropical climate where this school is located, outdoor classes, in mental as well as physical exercises, could be conducted nearly every day, even in the winter season. This matter of physical

education and exercise in the open air does not mean that the time-honored and highly essential functions of mental and moral instruction have been discounted or impaired. It merely means that the modern public school, i. e., the men and women who plan for and support and conduct them, including our Legislators and State Department of Education, recognize the value of the ancient maxim which emphasizes the importance of "a sound mind in a sound body." Perhaps this matter of physical instruction, exercise and development, out in the open air of the school grounds when possible, were not so important, especially in rural communities, back in the days when most of the pupils had to walk some distance to and from school and "do their chores" before they left home and after they returned, but in these days of the automobile and the school bus it is generally regarded as one of the most important functions of our public schools. This is shown by the references hereinabove made to the recommendations of the State Superintendent of Public Instruction, and it is also indicated by the following quotations from the School Code, adopted by the 1939 Legislature, being Chapter 19355 of the Laws of Florida.

Paragraphs 8 and 9 of Section 118 read as follows:

"SCHOOL.—A school is an organization of pupils for instructional purposes into classes or grades at any school center of an elementary, a high or secondary school, or other public school level approved by and under regulations of the State Board.

"SCHOOL CENTER.—A school center is the place of location of any school or schools on the same or on adjacent sites."

Paragraph 11 of the same section is as follows:

"SCHOOL PLANT.—A school plant includes all physical features incident to or necessary to accommodate pupils and

teachers and the activities of the educational program of each school center. It includes site, playgrounds and equipment, athletic field, the school building or buildings with all their mechanical and educational equipment, gymnasiums, vocational buildings, bus sheds, teachers' homes, and other equipment wherever located necessary to provide an adequate school program."

And Section 920 of said Act is as follows:

"SITE MUST BE ADEQUATE.—Each new site selected shall be adequate in size to meet the needs of the school to be served. As far as practicable, any present sites which are not adequate shall be increased to conform to minimum standards for new sites. Each school site shall contain a minimum of two acres for a one-teacher school. At least one acre shall be added to this minimum size of the site for each fifty pupils enrolled in the school after the first fifty pupils and until the enrollment reaches five hundred pupils; Provided that this requirement may be waived in the discretion of the State Superintendent under regulations of the State Board when any County Board files evidence showing that a school site of that size is impracticable in any given situation."

It is true that Section 922 of this same statute reads:

"UNDESIRABLE PLACES PROHIBITED NEAR SITES.—No place at which liquors are sold, gambling devices are provided, or other features classed under regulations of the State Board as detrimental to the moral or physical welfare of children shall be located nearer than three hundred feet to any school site."

This section cannot, however, be held to repeal Section 9 of Chapter 17074, which prohibits the issuance of a permit for the operation of a Jai-a-lia fronton, to be constructed or operated within one thousand feet of an existing public

school. A statute dealing with a particular matter, such as the granting of permits for the operation of Jai-a-lia frontons and the location of such frontons with reference to distance from an existing church or public school, is not repealed by a later statute framed in such general terms as Section 922 of Chapter 19355, which does not expressly mention such frontons, and which does not expressly attempt to repeal or amend the former statute expressly relating thereto.

This Court has frequently held that the practical construction placed upon a statute by an administrative department of the State government, while it is not binding upon the courts, yet, when not in conflict with the Constitution or the plain intent of the Act, such departmental construction is of great persuasive force, and efficacy, especially when established by long usage. Amos v. Mosely, 74 Fla. 555, 77 So. 619; State v. Bryan, 50 Fla. 293, 39 So. 929; Bloxham v. Consumers Electric Light Co., 36 Fla. 519, 18 So. 444; State ex rel. Comfort v. Leatherman, 99 Fla. 899, 128 So. 21. So, the question here is, as heretofore stated, one of legislative intent. The State Racing Commission construed the words "existing public school," as used in Section 9 of Chapter 17074 to mean the existing public school building whereas a majority of this Court, with due deference to the ruling of the Commission, are of the opinion that, in the light of conditions existing when the statute was adopted, the quoted words mean not only the building, but the grounds of the school property surrounding the building, which are used for playgrounds, physical exercises or physical instruction, or for conducting classes outside the building, in connection with and as a part of the school educational institution, and by methods usually followed by public schools. This conclusion is fortified by the quoted

provisions of the School Code recently adopted by the Legislature.

It has been held that the word "school" is a generic term, denoting "an institution or place for instruction or education, or the collective body of instructors and pupils in any such place or institution;" that a school is not measured by the walls of a building; that two or more schools may exist in one building; that it is "a place where systematic instruction in useful branches is given by methods common to schools and institutions of learning," etc. See 56 C. J. 167, where various definitions are given, and cases cited. One of the broadest of the definitions cited is attributed to the Supreme Court of Kansas, *In re:* Sanders, 53 Kan. 191, 36 Pac. 348, as follows: "Any place or means of discipline, improvement, instruction, or training."

The petition for the alternative writ alleges that this particular school is located upon a fence-enclosed site, where all indoor and outdoor educational facilities are provided and being utilized, including class rooms, recess and recreational areas, assembly and study halls, and rooms for mental training as well as outdoor assembly; recreational and physical training areas for the physical education of the pupils. All of these facilities, according to the allegations, are a part of this elementary public school, and it is alleged that the location of the proposed fronton building is therefore less than one thousand feet from the school. This assumes that these school grounds are a part of this public school. We think this is correct. It appears from the maps that if the measurement should be made by a straight line from the nearest point of the fronton association's *property,* rather than from the proposed building, to the nearest point on the school grounds, the distance would be a great deal less than one thousand feet; but measured from

the proposed location of the proposed fronton building to the nearest portion of the school grounds, the distance is also less than one thousand feet.

For the reasons above given, the motion of the respondents to quash the rule *nisi* is denied, and the alternative writ of mandamus will issue as prayed for in relator's petition.

TERRELL, C. J., WHITFIELD and BUFORD, J. J., concur.

Justices CHAPMAN and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.