70 So.2d 375 (1953)
STATE ex rel. GULFSTREAM PARK RACING ASS'N, Inc.
v.
FLORIDA STATE RACING COMMISSION et al.
Supreme Court of Florida. En Banc.
November 17, 1953.
Rehearing Denied December 11, 1953.
*376 Ward & Ward, Miami, for relator.
Richard W. Ervin, Atty. Gen., George E. Owen, Asst. Atty. Gen., and Walter E. Dence, Miami, for respondents.
*377 Boardman, Bolles & Kates, Miami, for Hialeah Race Course, Inc.
Baynard & Baynard and Leonard W. Cooperman, St. Petersburg, for University of Miami Alumni Ass'n.
Worley, Gautier & Dawes, Miami, for Gables Racing Ass'n.
Ausley, Collins & Ausley, Tallahassee, L.B. Vocelle, Vero Beach, William T. Fussell, Tampa, Rufus Jefferson, B.A. Meginniss, Leonard Pepper and John K. Folsom, Tallahassee, for Florida State University.
Willard Ayres, Ocala, E. Dixie Beggs, Pensacola, R.J. Bishop, Orlando, Louis S. Bonsteel, Miami, E.A. Clayton, Gainesville, G.H. Bourke Floyd, Apalachicola, Leo L. Foster, Tallahassee, William C. Gaither, Miami, J. Thomas Gurney, Orlando, J. Lewis Hall, Tallahassee, Wallace M. Jopling, Lake City, Gordon B. Knowles, Jr., Bradenton, William K. Love, Lakeland, Raymer F. Maguire, Orlando, Paul H. Marks, Miami, William A. McRae, Jr., Bartow, George L. Pink, Palm Beach, Edward B. Rood, T.M. Shackleford, Jr., Tampa, William P. Shelley, Jr., R.P. Terry, Miami, Hamilton D. Upchurch, St. Augustine, Fuller Warren, Tallahassee, and Olin E. Watts, Jacksonville, for University of Florida.
Leo Foster and J. Lewis Hall, Tallahassee, for Florida A. & M. University, amici curiae.
PER CURIAM.
Contention is made by the Relator that Sections 550.03 and 550.08, Florida Statutes, F.S.A., are violative of Sections 2 and 4 of Article 9 and Section 30 of Article 3 of the Florida Constitution, F.S.A. The CHIEF JUSTICE and Justices TERRELL, THOMAS, SEBRING, MATHEWS and DREW are of the opinion that such a contention is without merit and that Sections 550.03 and 550.08, supra, are immune to such constitutional attack.
The contention is also made by the Relator that, in the event such Acts are upheld as valid legislative enactments, the scholarship and charity days provided for therein are to be allocated outside the 120-day racing season which begins by statute on December 1st of each year. The effect of the contention of the Respondents is that Sections 550.03 and 550.08 extended the racing season from 120 days to 126 days and that the charity and scholarship days are not necessarily prior to December 1st or after the end of the 120-day season. The CHIEF JUSTICE and Justices SEBRING, HOBSON and MATHEWS are of the opinion that the scholarship and charity days created by Sections 550.03 and 550.08 must necessarily be awarded either prior to December 1st or subsequent to the 120-day racing season or distributed within such pre-season and post-season period and cannot be allowed within the normal 120-day racing season which begins December 1st. Justices TERRELL, THOMAS and DREW are of the opinion that the allocation of a part of the scholarship and charity dates within the 120-day season was not an abuse of discretion by the Respondents.
Mr. Justice HOBSON is of the opinion that the legislative enactments complained of are immune to the attack herein made but that under certain conditions and under proper attack they might become violative of the Fourteenth Amendment to the United States Constitution.
Specially concurring opinions setting forth the views of certain individual justices are being published herewith.
It is therefore the order of the court that the constitutional objections raised to the scholarship and charity acts, Sections 550.03 and 550.08, Florida Statutes, F.S.A., are without merit and that the Respondents grant to the Relator, Gulfstream Park Racing Association, Inc., a permit in accordance with the application of said Relator now on file so as to permit the said Relator to begin its racing season on March 4, 1954, and to run for 40 consecutive racing days thereafter, Sundays excluded.
It is so ordered.
*378 ROBERTS, C.J., and TERRELL, THOMAS, SEBRING, HOBSON, MATHEWS and DREW, JJ., concur.
TERRELL, Justice.
Gulfstream Park Racing Association, Inc., secured an alternative writ of mandamus from this Court directed to the Florida State Racing Commission, commanding it to modify its order allocating to Tropical Park Race Course, Hialeah Race Course and Gulfstream Park Racing Association, Inc., certain charity or scholarship racing days for the 1953-1954 racing season or to show cause. We are confronted with a return and a motion to quash the alternative writ.
It is first contended that the alternative writ should be quashed because the Board of Control, the University of Florida, the Florida State University, the Florida A. and M. University, Tropical Park Race Course and Hialeah Race Course, interested and necessary parties to the cause, are not made so by the alternative writ.
There is no merit to this contention. The real purpose of the litigation is to adjudicate the validity of the Commission's order relative to racing dates including a fund which is collected and paid into the State treasury for support of charities and scholarships. It is unnecessary to make those not substantially affected parties to the litigation, but even so, they were heard amici curiae and were permitted to file briefs. They are accordingly on notice of the litigation, and for all practical purposes they are parties to the cause. If they had been made parties respondent they could have done nothing more, but since this case is to settle validity and status, their presence as parties to the cause was not essential. State ex rel. Stewart v. Mayo, 160 Fla. 367, 35 So.2d 13; State ex rel. West Flagler Amusement Co., Inc., v. Rose, 122 Fla. 227, 165 So. 60.
The second question challenges the power of respondents to change or alter racing dates that have been once fixed in the manner authorized by statute.
The answer to this question requires consideration of the following statutes, the pertinent part of which is as follows:
1. Section 550.03, F.S. 1953, F.S.A. (Charitable Organizations passed in 1941).
"Provided, however, that the Florida state racing commission may extend said limitations of time for horse and dog racing not to exceed one day at any one track, when such additional day of racing is conducted under the auspices and for the sole benefit of some one or more charitable institutions or organizations, and further provides that for the purposes of this section the University of Miami shall be deemed to be a charitable institution and that a portion of the proceeds available for the charitable purposes in an amount not less than twenty-five per cent thereof shall be paid over to and for the benefit of the University of Miami, and provided further that the total of all profits derived from the operation of such racing on such day including all taxes which would otherwise be received by the state racing commission for such day's operation shall be and become a part of charity fund for which such racing on such days is conducted."
2. Section 550.08, F.S. 1953, F.S.A. (Scholarship Act passed in 1949).
"Provided the state racing commission is authorized to grant one additional day of racing during the race meeting period granted to any track as provided by law, upon application and agreement by any track in which one specific day of any meet shall be set aside, and all profit, less actual operating costs, from such specific day's operations of such track including all taxes payable to the State of Florida or any agency thereof for such day's operation shall be paid into the state treasury for a scholarship fund which shall be administered by the board of control of the institutions of higher learning of the State of Florida for the granting of scholarships for the *379 purpose of attending the institutions of higher learning of the State of Florida upon such terms and conditions as the said Board may from time to time prescribe.
"(2) The provisions of this section are supplemental to § 550.081 and shall be construed as authority for granting additional days of racing above the total of one hundred and twenty days limitation therein except that each horse race track may run only one additional day as herein provided during its race meeting period as authorized by said law and the one hundred and twenty days limitation therein shall in no event be extended beyond three additional days."
3. Chapter 28,499, Acts of 1953, (Hillsborough County Act.)
"In all counties having a population of not less than two hundred thousand (200,000) nor more than two hundred and seventy-five thousand (275,000) according to the latest official census, the state racing commission is authorized to grant an extra day of racing to each horse or dog track located in the county. This extra day shall be added to any other additional day of racing heretofore authorized by law. This extra day of racing shall be granted by the racing commission upon application and agreement by the race track owner or operator that all profits, less actual operating costs, from such specific day's operations including all taxes payable to the state or any agency thereof for this extra day's operation shall be paid to the trustees or other governing body of any institutions of higher learning located in the county and having comparable curricular standards for entrance and graduation as is prescribed for state senior universities. * * *"
The purpose of these statutes is to permit two extra days of racing to the track owners who apply for permission to do so, the profits, less cost of operation to be available to certain charitable and educational institutions for scholarship purposes. Relator contends that such profits are in fact state tax funds and that the attempt to withdraw them from the state treasury for the stated purposes, absent an act of the legislature so appropriating them, is in violation of Sections 2 and 4, Article IX, of the State Constitution.
More than one substantial reason rebuts this contention. In the first place the profits which accrue from the extra day of racing, as authorized by Section 550.08, is not a tax as that term is currently employed. In common parlance a tax is a forced charge or imposition, it operates whether we like it or not and in no sense depends on the will or contract of the one on whom it is imposed. Klemm v. Davenport, 100 Fla. 627, 129 So. 904, 70 A.L.R. 156; Hiers v. Mitchell, 95 Fla. 345, 116 So. 81.
In the second place the statute does not compel the track owner to race the extra day. It is done "upon application and agreement by any track" and donation of the profits is permissive or voluntary rather than mandatory. The language of the statute is permissive, there is nothing compulsory about the extra day's racing. The exercise ordinarily paid by the race tracks to the state goes into the profits and the quoted statutes exempt the race tracks which voluntarily run the extra day, from payment of taxes and instead direct the proceeds to charitable and educational purposes in the manner provided. Such has been the consistent administrative interpretation which is logical and entitled to great weight. State ex rel. Fronton Exhibition Co. v. Stein, 144 Fla. 387, 198 So. 82. We agree with this interpretation.
Now let us consider the contention that Sections 550.03 and 550.08, Florida Statutes, F.S.A., are violative of Sections 2 and 4, Article IX and Section 30, Article III of the Constitution.
Section 30, Article III inhibits the general appropriation bill, for salaries and other expenses of the State government, *380 containing provisions on any other subject. Section 2, Article IX, has to do with raising revenue for support of the state government and Section 4, Article IX prohibits drawing money from the treasury except in response to appropriation by the legislature. We take it that relator has abandoned it's contention as to Section 4, Article IX since it is not argued in the brief.
As to violation of Section 30, Article III, we have repeatedly pointed out that the purpose of this provision is to prohibit the general appropriation bill for state expenses being laden with items that tend to hamper the conduct of the government. Amos v. Moseley, 74 Fla. 555, 77 So. 619, L.R.A. 1918C, 482. By no stretch of the imagination can we see that the cited acts when reasonably construed violate this provision of the constitution. Neither do we find that said acts violate Section 2, Article IX of the Constitution. It appears to be relator's contention that these acts levy and appropriate state taxes for charities and scholarships which are not public purposes as contemplated by law. We have already held that the imposition was not a tax as generally understood but even if it were, the legislature is the judge of what constitutes a public purpose and was empowered to make the appropriation for scholarships. Overman v. State Board of Control, Fla., 62 So.2d 696. See also Carlton v. Mathews, 103 Fla. 301, 137 So. 815 and State v. Brevard County, 99 Fla. 226, 126 So. 353, where the provision of the constitution in question was discussed and we there held that the command of Section 2, Article IX had reference to such expenditures as the legislature authorizes and which was not prohibited by the constitution. We find no provision of the constitution which prohibits appropriations for scholarships in the institutions of higher learning and relator has pointed out none. We have examined the cases from Missouri, Kentucky and other jurisdictions relied on by relator but they were predicated on statutory and constitutional provisions entirely different from ours and are not in point.
Relator also contends that Section 550.08 (Scholarship Act) authorizes the State Racing Commission, in its discretion, to extend the middle 40 day period of the racing season to the disadvantage of the horse race track that is awarded said period. Such an extension, it contends, is unlawful.
A reading of the act discloses that the one day extension of the racing season was for the sole purpose of providing charities and scholarships as per agreement with the horse race tracks. The scholarship act must be read in connection with Chapter 23,728, Acts of 1947, which provides for allocation of the 40 day period of racing where as many as three horse race tracks operate within a radius of 100 air miles. When so read, the scholarship act is clear and certain and means that when a track applies for the extra days the Racing Commission may allocate such day in any reasonable manner.
In this holding we do not overlook the contention that when the extra days of racing are applied for and allowed, they must not commence earlier that the first of December in any year. This contention is predicated on Section 550.081, Florida Statutes 1951, F.S.A., requiring that "the annual period of operating of such horse race tracks shall begin on December first of each year * * *." It is pointed out that if this requirement is met the dates for Tropical Park track would run from December first 1953 to January 18, 1954, instead of November 30, 1953 to January 16, 1954, as provided by the Commission. All other racing dates would be changed accordingly, where there are three tracks within a radius of 100 air miles of each other.
It is true that the original act fixed the date of opening and closing the racing season but that as now in force it fixes December first as the opening date but leaves the closing date open. It is also true that the charity act and the scholarship act give the Commission some latitude in fixing the race meeting period where additional days of racing are applied for. The Commission construed the act as authorizing *381 them to add the extra days to either end of the 120 day racing period. The effect of their action was to begin the racing period one day earlier, that is to say on November 30, and thereafter each of the three tracks to run 42 consecutive days. We are not convinced that they abused their discretion in so doing. After all is said, the question of regulating horse racing is a statutory matter and so long as done within reasonable bounds, the act of the legislature should be upheld. The questions raised here involve matters of pure legislative discretion and we do not find that the legislature or the Racing Commission has transgressed its authority.
It is accordingly our view that the constitutional objections raised to the scholarship and charity acts are without merit and that when construed together, in the light of their purpose and history they provide for additional days of racing on condition that the profits be allocated to a scholarship fund for attendance at the state institutions of higher learning.
The motion to quash the writ should be granted.
THOMAS and DREW, JJ., concur.
MATHEWS, Justice (concurring in part and dissenting in part).
All of that part of the opinion of Mr. Justice TERRELL is concurred in except that portion which permits the respondents to exercise any discretion which would change the commercial racing dates as fixed and established by Section 550.081 F.S., F.S.A. The pertinent parts of this section are as follows:
"(1) * * * It is the further finding of the legislature that where more than one horse race track is located in a radius of one hundred air miles of one or more horse race tracks and the allocation and distribution of periods of operation to and between said horse race tracks is vested solely in the discretion of the state racing commission, that the power to change, alter and vary such racing periods from year to year, as it may see fit, is unsound and unwise, and creates a condition of uncertainty which retards the natural expansion and development of this business and influences and affects the financial stability of the state and counties. It is therefore declared to be the policy of the State of Florida that the present danger to the growth and welfare of horse racing and to the tax structure of the state and counties be eliminated insofar as the discretionary powers of the state racing commission in allocating dates to the horse tracks is concerned and this enactment is made pursuant to and for the purpose of carrying out such policy.
"(2) Where three horse race tracks in this state are located in a radius of one hundred air miles of each other, the annual period of operating of such horse race tracks shall begin on December first of each year and continue for a full period of one hundred and twenty consecutive days, exclusive of Sundays, and each of said horse race tracks is hereby permitted to race for a full period of forty consecutive racing days, exclusive of Sundays. Such forty day racing periods are hereby established as follows: The first period to consist of the first consecutive forty racing days of such annual racing period, the second period to consist of the second consecutive forty racing days of such annual racing period, and the third period to consist of the third consecutive forty racing days of such annual racing period." (Emphasis supplied.)
Subsection (3) of Section 550.081 F.S., F.S.A., provides the "yardstick" for allocating the three forty-day periods.
Section 550.081 F.S., F.S.A., has not been repealed or amended and is still in full force and effect. It has reference to commercial racing and the one hundred twenty-day period and the three forty-day periods included within the one hundred twenty-day period are set, fixed and established *382 by the Legislature and all discretion with reference to changing or modifying said dates is withdrawn from respondents.
The declaration contained in the above section of the statute clearly and unmistakably shows the legislative intent which was the expansion and development of the business and the protection of "the financial stability of the state and counties." In order to accomplish this purpose it was declared to be the policy of the state to eliminate the discretionary powers of the state racing commission in allocating dates within the one hundred twenty-day period except as provided for in the statute itself. The Legislature pre-empted the field, which it had a right to do as to commercial racing dates, and thereby eliminated the discretionary powers of the racing commission with which they had theretofore been vested, as to such dates.
Any discretion now vested in the respondents by other statutes with reference to charities and scholarship dates does not vest in the respondents any authority or power to add to or take from or change the one hundred twenty-day commercial racing season which is divided into three parts of forty days each. When a track applies for extra racing dates under other sections of the statutes for charities or scholarships, the respondents may allocate such day or dates before or after, or before and after, the one hundred twenty-day commercial season provided for by Section 550.081 F.S., F.S.A., but they cannot be so allocated as to change the said one hundred twenty-day period or the beginning or the ending thereof or either of the three forty-day periods within the one hundred twenty-day period.
Under the declared public policy of this State the revenue which the state and the counties receive from race tracks has become vital to the tax structure and to the economy of the state and of the counties and one clear and unmistakable intention of the Legislature, by the enactment of Section 550.081 F.S., F.S.A., was to protect the financial stability of the state and of the counties.
The record shows that charity and scholarship funds have heretofore benefited to the extent of several hundred thousand dollars without involving the one hundred twenty-day period. It may be desirable that such funds receive even more benefits. However, the Legislature has determined that old age assistance, "financial stability of the state and counties" is of such importance that "the discretionary powers" of the respondents to "change, alter and vary such racing periods" be "eliminated." The Legislature has declared the policy about this matter, and only the Legislature, not the respondents, or the courts, may change it.
In the case of Hialeah Race Course v. Gulfstream Park Racing Ass'n, Fla., 37 So.2d 692, 694, this Court upheld the constitutionality of the 1947 Act which is now Section 550.081 F.S., F.S.A. In that case this Court recognized the interest which the state has in commercialized gambling at horse race tracks, and in upholding the Act in question said:
"The power of the legislature to limit racing to 120 days and to prescribe that no two tracks shall operate at the same time is not questioned. Since the limitation of time is imposed it then becomes a question of the validity of the act in respect to its provision for the allocation of time among the three tracks.
"The state has become pecuniarily interested in racing because of the revenue from the pari-mutuel betting. Authorized gambling is a matter over which the state may exercise greater control and exercise its police power in a more arbitrary manner because of the noxious qualities of the enterprise as distinguished from those enterprises not affected with a public interest and those enterprises over which the exercise of the police power is not so essential for the public welfare." (Emphasis supplied.)
*383 The peremptory writ should issue in accordance with this opinion.
ROBERTS, C.J., and SEBRING, J., concur.
HOBSON, Justice (concurring specially).
I concur in the opinion prepared by Mr. Justice MATHEWS. It is my view Relator has not demonstrated that the acts of the Legislature which it challenges are, in fact, unconstitutional. Section 550.08, Florida Statutes 1953, F.S.A., which was passed by the 1949 Legislature in my judgment might be unconstitutional because it may not operate equally and uniformly upon all members of a class who are affected. However, Relator has not challenged said act as being violative of the Fourteenth Amendment to the Federal Constitution, although it did suggest that it might be subject to such attack.
It is true nevertheless that the judgment entered consequent upon the opinion of Mr. Justice MATHEWS, insofar as the relief sought by Relator is concerned, would be the same if this court had had before it the question whether the 1949 act is violative of the Fourteenth Amendment and had answered such query in the affirmative.