STURGIS, Chief Judge.
The appellant, Whitehead & Kales Company, plaintiff below, seeks reversal of a summary final decree in favor of the State Comptroller, defendant below, whereby it was held that the transactions outlined in the complaint are taxable under Section 212.05 Florida Statutes, F.S.A., and injunc-tive relief was denied against the enforcement of the tax.
In November 1956 the appellant corporation contracted with United Aircraft Corporation to “furnish all labor, materials and equipment” and to “perform all work pertaining to and required for the fabrication and erection of structural steel” for certain structures to be located in Palm Beach County as described in the contract. The compensation was payable in installments computed on the basis of an “Agreed Formula for Determining Total Price” whereby the tons of steel required for the job would be multiplied by a fixed unit price per ton, with the last installment due within 30 days after completion of the work.
The appellant maintained a structural steel plant in Michigan where it manufactured the prefabricated steel to be used in the performance of the subject contract. In the process of fabrication the appellant incurred certain expenses consisting of engineering and shop fabrication costs, which included amounts expended for labor and overhead. It also paid a substantial amount for transportation costs from its plant in Michigan to the Florida building site. It was on these three items which we will delineate as engineering, shop and transportation expenses, that the Comptroller assessed the controverted use taxes. Appellant had previously paid the use-tax on the cost of the raw materials used in the fabrication of the steel products.
A hearing was held before an agent of the Comptroller’s office who determined that the use tax had been properly imposed on the three items mentioned. The officer relied on F.S. § 212.05(2), F.S.A. which provides that a tax may be levied at the rate of three per cent of the cost price of personal property used in this state, F.S. § 212.02(5), F.S.A. which defines “cost price”, and upon Comptroller’s Rule 51(3) whereunder a firm engaged in the business of furnishing and fabricating steel beams, *734 trusses, columns, etc., must charge tax on the entire amount with no segregation of materials and labor.
The circuit court granted the defendant’s motion for summary decree on the authority of Harvey v. Green, Fla., 85 So.2d 829, and Green v. Reed Construction Corp., Fla., 91 So.2d 634. It is appellant’s position that under the provisions of Comptroller’s Rule 51[1] it was engaged in furnishing materials and supplies for a lump sum and therefore should be considered to be an ultimate consumer and not responsible for the collection of the taxes.
The nub of the controversy is that if the transaction involved a sale to a Florida consumer and the appellant can be classified as a dealer, then the use tax is collectible from it under F.S. § 212.06(1), F. S.A.
At this point we would like to emphasize that we are dealing with a use tax as distinguished from a sales tax. The theory supporting the use tax is that it is an impost on the privilege of using personal property which has been shipped into the state and come to rest in the taxing forum and has become a part of the property within the taxing situs. The levy is actually imposed upon and collected from the ultimate consumer who as a Florida resident enjoys the use of the property after it has come to rest. However, for purposes of enforcing collection of the use tax, the dealer is the one who is charged with remitting the tax. See Scripto, Inc. v. Carson, Fla., 105 So.2d 775.[2]
For all practical purposes, the dealer customarily includes in his price to the consumer the tax for the remission of which the dealer is responsible. We deal in triv *735 ialities unless we recognize that the consumer actually pays the use tax which the dealer remits. It might he mentioned at this juncture for the purpose of illustration, but not necessarily determinative of our decision, that the mentioned contract provided that the unit price would include “state sales and/or use tax.”
The revenue act in question provides that a person is exercising a taxable privilege who uses, stores or consumes an article of tangible personal property (F.S. § 212.05, F.S.A.). It also provides that the rate of taxation shall be three per cent of the cost price of each item of tangible personal property when it is used in this state (F.S. § 212.05(2), F.S.A.). The cost price is determined at the moment of purchase and collectible from all dealers (F.S. § 212.06 (1), F.S.A.). The dealer is defined as a person who manufactures tangible personal property for use in this state (F.S. § 212.06 (2) (a), F.S.A.), and this seems to us a fair description of the appellant’s operations. A more specific relation of appellant’s scheme of business to the tax is set out in Rule 51(5) where it is provided:
“Contractors, who operate manufacturing plants which make items of tangible personal property for their own consumption and use in the performance of contracts for the construction or improvement of real property, are subject to tax upon the manufactured cost of such items. This includes the cost of all materials as well as the cost of labor, power and other plant expenses.”
The first part of Rule 51, relied on by appellant, is inapplicable because it refers to sales by contractors. Strictly speaking, the appellant is not a seller of his products, but is a contractor who manufactures materials for use in construction contracts.
To summarize: The aircraft company was the Florida user of tangible personal property[3] manufactured by the appellant contractor who, under the broad definition of a “dealer”, is responsible for the collection of the use tax.
Having determined that a use tax could properly be imposed and collected from the appellant, the next question is, upon what items can the tax be levied? “Cost price”, which is the basis for the use tax (F.S. § 212.02(5), F.S.A.), is defined in the Act as the actual cost of articles of tangible personal property without any deduction therefrom on account of the cost of materials used, labor or service costs, transportation charges, or any expenses whatsoever. Comptroller’s Rule 51(5), quoted above, accords with this statute by a more specific reference to the particular type of manufacturing arrangement with which we are concerned. It seems more applicable than Rule 51(3), relied on by the hearing officer, in that the Comptroller has applied that rule to a firm who merely fabricates steel beams for sale, whereas the appellant fabricated the items for use in the performance of a contract which contemplated a completed structure.
Although we are not bound to follow administrative rulings, the Comptroller has authority to publish rules and regulations not inconsistent with the provisions of Chapter 212, and in the absence of a conflict or inconsistency, such rulings will be given persuasive force. State ex rel. Fronton Exhibition Co. v. Stein, 144 Fla. 387, 198 So. 82. In making the contractor subject to the tax upon the manufactured cost without any deductions for expenses, Rule 51(5) does not conflict with any provision of F.S. c. 212, F.S.A., and in fact is in accord with F.S. § 212.12(5), F.S.A.
The holding of the Chancellor, with which we agree, is consistent with Green *736 v. Reed Construction Co., Fla., 91 So.2d 634, and Harvey v. Green, Fla., 85 So.2d 829. In the Reed case a contractor prefabricated concrete pilings to be used in various construction operations. He sold the pilings to customers at a lump sum price which included the installation. The Supreme Court held the manufacturer to be a dealer and upheld the assessment of a sales tax on the cost of the pilings. In the Harvey case the protesting taxpayer was engaged in manufacturing grill work according to specification which he either delivered to the customer at the manufacturer’s place of business or installed on the ■customer’s property for an agreed amount. It was held by the Supreme Court that the manufacturer was liable for a sales tax on the retail price of the grill work, but that since installation costs were exempt under a ruling of the Comptroller, they were not taxable if they could be separated from the •cost of the unit. It will be noted that the definition of “sales price”, which is the cost basis for the sales tax, is similar to that ■of “cost price” in that the legislature intended to adopt as a basis for the tax the •total amount paid by the purchaser to the seller at the time the sale was consummated, without any deduction for any of the ■component factors of cost which were expended by the seller in arriving at the total ■amount charged the purchaser.
Since in the cited cases it was found proper to impose a sales tax on the total cost of items prefabricated or manufactured, then there is no reasonable .ground for subtracting labor or “any other ■expense” whatsoever when seeking to impose a use tax. It has been often stated that the use tax is a device to equalize taxes in order that those who sell products manufactured within a state to buyers therein would not be placed at a disadvantage in competition with goods manufactured in other states and sold to buyers within the state. Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814; Miller Bros. v. State of Maryland, 347 U.S. 840, 74 S.Ct. 535, 98 L.Ed. 744.
Since the cost incurred in the manufacture of the prefabricated units are proper subjects for the use tax, we now turn to the consideration of the transportation expenses from the manufacturing plant in Michigan to the Florida job site. We are aware of the recent cases of United States Gypsum Co. v. Green, Fla., 110 So.2d 409, 416, and Green v. State ex rel. American Can Co., Fla.App., 112 So.2d 298, which determined, inter alia, that transportation costs incurred by a seller in bringing personal property into the state after the consummation of the purchase were not taxable as part of the cost price. The rationale of the United States Gypsum Co. case was that the freight charges were incurred after the “moment of purchase” as contemplated by F.S. § 212.06(1), F.S.A. The opinion in that case very carefully stated: “If the purchase had been f. o. b. a point in Florida the freight charges might well have been included as a part of the cost or purchase price and therefore taxable, but the issue is not before us and we do not decide it now.”
The contract which appellant had with the aircraft company provided that appellant would furnish all materials and would install the structural steel as part of the completed contract in Florida. The bargain was for finished structures at the Florida site and the total price was computed on that basis. Accordingly, the costs to ship the prefabricated units from Michigan to Florida were or should have been included in the computation of the unit price as a basis for determining the total price and, it follows, in determining the amount of the use tax. The shipping charges were not incurred after consummation of the transaction. Such charges should, therefore, be computed in arriving at the use tax imposable on the transaction.
Affirmed.
CARROLL, DONALD, J., and DREW, E. HARRIS, Associate Judge, concur.

. “(1) Where contractors or sub-contractors perform contracts in connection with the repair, alteration, improvement and construction of real property, and contracts covering a combination of work on both real and personal property, it is necessary to determine the method adopted by such contractors, or subcontractors in arriving at the total contract pi-ice charged to their customers in the fulfillment of their contracts, for the purpose of ascertaining whether the receipts from sales made to or by them are taxable.
“(2) Such contractors may include among others, building, electrical, plumbing, heating, painting, decorating, ventilating, paper hanging, sheet metal, bridge, road, landscape or roofing contractors and they may use one or more of the following methods in arriving at the total contract price:
“(a) Those contracts in which the contractor or sub-contractor agrees to furnish materials and supplies and necessary services for a lump sum;
“(b) Those contracts in which the contractor or sub-contractor agrees to furnish the materials and supplies and necessary services on a cost-plus basis;
“(c) Those contracts in which the contractor or sub-contractor agrees to furnish the materials and supplies and necessary services with an upset or guaranteed price which may not be exceeded; and
“(d) Those contracts in which the contractor or sub-contractor agrees to sell materials and supplies at an agreed price or at the regular retail price and to complete the work either for an additional agreed price or on the basis of time consumed.
“When a contractor or sub-contractor uses materials and supplies in fulfilling either a lump sum contract, a cost-plus contract, a time and material contract with an upset or guaranteed price which may not be exceeded or any other kind of contract except one falling in class (d) above, he becomes the ultimate con- • sumer thereof. The person or dealer who sells such materials and supplies to such contractor or sub-contractor is making sales at retail to him and is required to collect the tax from him based upon the receipt from such sales.

. In Green v. Panama City Housing Authority, Fla.App., 110 So.2d 490, the majority held that the sales tax was imposed on the dealer and collectible from him. This writer was of the opinion that the sales tax was imposed on the purchaser under the authority of recent Supreme Court decisions. Insofar as use taxes are concerned, the statute clearly states that one is exercising a taxable privilege if he uses tangible personal property in this state. Therefore the use tax is imposed on the user but collectible from the dealer.

. The Supreme Court has held that materials used in the construction of buildings for private enterprise are tangible personal property. Gay v. Jemison, Fla., 52 So.2d 137; Green v. Reed Construction Corp., Fla., 91 So.2d 634; Green v. Elgin AFB Housing, Inc., Fla., 104 So.2d 463.