443 So.2d 501 (1984)
BUREAU OF CRIMES COMPENSATION, FLORIDA DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, Appellant,
v.
George REYNOLDS, Appellee.
No. 82-1623.
District Court of Appeal of Florida, Third District.
January 17, 1984.
Sonja P. Mathews, Miami, for appellant.
Whitman, Wolfe, Gross & Salmon and John W. Salmon, Miami, for appellee.
Before SCHWARTZ, C.J., and HENDRY and BASKIN, JJ.
BASKIN, Judge.
In enacting the Florida Crimes Compensation Act, Chapter 960, Florida Statutes, the legislature implemented its desire to provide governmental financial assistance to financially disabled victims of crime by enabling victims to meet loss of earnings, support, or out-of-pocket medical expenses. The issue in this appeal by the Department of Labor Bureau of Crimes Compensation is whether a crime victim's receipt of his annual leave and sick leave benefits accumulated during his employment constitutes a source of income precluding him from showing serious financial hardship and actual need. Holding that serious financial hardship and actual need may be established despite the availability to the victim of annual leave and sick leave benefits, we affirm.
George Reynolds had worked for Dade County for twenty-four years when he was shot just before departing for work one February morning. As a result of the incident, Reynolds lost two fingers and was unable to work from February 21, 1980 to June 3, 1980. Reynolds applied for assistance under the Crimes Compensation Act. Recognizing that Reynolds had been the victim of a violent crime, the Bureau of Crimes Compensation awarded funds for the payment of Reynolds' medical expenses as well as payments to offset his wage losses for the period between March and June of 1980. Because Reynolds received his accumulated sick leave and annual leave benefits during the period between February and March, 1980, and that amount equaled his full salary for that period, he received no award for lost wages under the Crimes Compensation Act for February or March, 1980. After exhausting his sick leave and annual leave funds, Reynolds was forced to borrow $1300 in order to make ends meet. He requested a hearing to obtain reimbursement for the depletion of his sick leave and annual leave benefits under the Crimes Compensation Act. Upon consideration of the testimony and evidence presented at the hearing the commissioner determined that Reynolds "exhibited actual need and financial hardship by the fact that he had to borrow $1,300.00 during the period subsequent to his injury of February 23 [sic], 1980." The commissioner ordered that Reynolds be *502 compensated "66 2/3 per cent of his average weekly wage, not to exceed the maximum compensation rate for lost wages between February 21, 1980 and March 31, 1980... ." This appeal ensued.
The Bureau's appeal is predicated upon its contention that Reynolds' sick leave and annual leave benefits constituted a financial resource prohibiting the commissioner from granting an award during the period the benefits were available. In addition, the Bureau argues that a claimant is obligated to use the annual leave and sick leave benefits he has earned and that depletion of those benefits may not create an "actual need" within the meaning of section 960.13(2), Florida Statutes (1979). Thus, the Bureau contends, the commissioner was unjustified in ordering a "wage loss" award under section 960.13(7). We disagree.
The Crimes Compensation Act is based upon the legislature's express policy, contained in section 960.02, Florida Statutes (1979), determining:
[T]hat there is a need for government financial assistance for ... victims of crime... . [and that] it is the intent of the Legislature that aid, care, and support be provided by the state, as a matter of moral responsibility, for such victims of crime.
Sections 960.13(2) and 960.13(7)[1], Florida Statutes (1979), provide:
(2) Any award shall be granted on an "actual need" basis and shall be provided subsequent to all benefits provided by primary insurance carriers, including, but not limited to, health and accident insurers, workers' compensation, and automobile accident coverage.
.....
(7) If the commission or commission member, as the case may be, finds that the claimant, if not granted assistance pursuant to this chapter to meet the loss of earnings, support, or out-of-pocket loss, will not suffer serious financial hardship as a result of the loss of earnings or support and the out-of-pocket loss incurred as a result of the injury, the commission or commission member shall deny the award. In determining serious financial hardship, the commission or commission member shall consider all the financial resources of the claimant. Unless a total dependency is established, members of a family are considered to be partially dependent upon a homemaker with whom they reside, without regard to actual earnings.
The Act clearly authorizes assistance in the event of serious financial hardship incurred as a result of the injury. In determining serious financial hardship, the commissioner need only consider the financial resources of the claimant; it is not required to ascertain that the victim is entirely destitute.
Examining the record in light of the foregoing principles, we find substantial, competent evidence to support the commissioner's factual determination that Reynolds suffered actual need and serious financial hardship. Not only did Reynolds exhaust the sick leave and annual leave benefits he had accumulated, he was also forced to borrow simply to subsist. Reynolds is the sole provider of his household[2] and possesses no substantial assets. His ability to *503 provide was interrupted by the crime leading to his incapacitation.
It is well-settled that construction of a statute by the administrative agency charged with its interpretation is accorded great weight and persuasive force. Daniel v. Florida State Turnpike Authority, 213 So.2d 585 (Fla. 1968); Florida Dairy Farmers Federation v. Borden Company, 155 So.2d 699 (Fla. 1st DCA 1963). Courts are generally reluctant to disagree with the agency's interpretation unless it is clearly erroneous, Daniel; Radio Tel. Communications, Inc. v. Southeastern Tel. Co., 170 So.2d 577 (Fla. 1964), or contrary to the constitution or the plain intent of the act, Radio Tel. Communications; State ex rel. Fronton Exhibition Co. v. Stein, 144 Fla. 387, 198 So. 82 (1940).
We find that based upon the substantial, competent evidence presented at the administrative hearing, the commissioner correctly applied the statutory criteria contained in sections 960.13(2) and 960.13(7) to the facts of this case. See City of Lake Wales v. Public Employees Relations Commission, 402 So.2d 1224 (Fla. 2d DCA 1981). We therefore hold that the commissioner properly exercised his discretion in awarding Reynolds lost wages under the Crimes Compensation Act for the first month of his incapacity.
Affirmed.
NOTES
[1] Section 960.13(7), as amended by Chapter 80-146, section 11, Laws of Florida, presently provides:

(7) If the division finds that the claimant, if not granted assistance pursuant to this chapter to meet the loss of earnings or support or out-of-pocket loss, will not suffer serious financial hardship as a result of the loss of earnings or support and the out-of-pocket loss incurred as a result of the injury, the division shall deny the award. In determining serious financial hardship, the division shall consider all the financial resources of the claimant. Unless a total dependency is established, members of a family are considered to be partially dependent upon a homemaker with whom they reside, without regard to actual earnings.
[2] Testimony at the hearing reflects:

Q. (By Mr. Turnbull) Does your wife work?
A. Huh?
Q. Does your wife work?
A. No. My wife have nerve trouble.
Q. Pardon?
A. My wife have nerve trouble. Nerves. She can't work.
Q. Do you own your own home?
A. Huh?
Q. Do you own your own home?
A. No.
Q. You rent?
A. Yeah.
Q. Do you have any money in the bank?
A. No.
Q. Do you have a bank account?
A. No.
Q. Do you own any property?
A. No.
Q. Do you own an automobile?
A. Yeah.
Q. What kind of car?
A. I own a '78 Ford and I own a '79 Ford pick-up.
DEPUTY COMMISSIONER: A '78  that's two vehicles or one vehicle?
THE WITNESS: I got two.
DEPUTY COMMISSIONER: Okay. A '78 Ford and what kidn [sic] of pickup?
THE WITNESS: '79.
DEPUTY COMMISSIONER: Okay.
Q. (By Mr. Turnbull) Did you own these cars at the time you were shot?
A. I owned a car, but I didn't own the truck.
Q. At the time you were shot, was the car paid for?
A. No. It ain't paid for yet.
MR. TURNBULL: That's all I have.