OVERTON, Justice.
Floridians for Responsible Utility Growth appeal an order of the Florida Public Service Commission (Commission) that there was a need for Tampa Electric Company’s proposed integrated coal gasification combined cycle (IGCC) electric generating unit, to be located in Polk County. We have jurisdiction[1] and affirm the Public Service Commission’s order.
Tampa Electric Company (TECO) filed a determination of need petition for a 220-megawatt IGCC unit pursuant to section 403.519, Florida Statutes (1991). The phased construction will include a 150-me-gawatt advanced construction turbine to be placed in service in mid-1995, and a 70-megawatt heat recovery steam generator and coal gasifier to be placed in service in mid-1996. The project, with $120 million in nonrefundable funding from the Department of Energy (DOE), will demonstrate hot gas clean up technology in an integrated coal gasification combustion cycle system. The grant from DOE is intended to offset some of the costs associated with the construction of the plant and the demonstration of the new technology. After comparing this alternative with its eight other expansion plans, TECO determined that the IGCC project was the most cost effective of all of its plans and initiated the proceeding in question for determination of need for the project.
In determining the need for the IGCC unit, the Commission considered the five factors delineated in section 403.519 of the Florida Statutes (1991). The Commission determined that, given the testimony and evidence presented during the hearing, TECO had a need for capacity in 1995 and 1996, that the IGCC project was the most cost-effective way to meet the need, and that additional conservation measures would not mitigate the need for the unit in 1996.
Floridians for Responsible Utility Growth (Floridians) filed a motion for reconsideration, which was denied. The Commission then denied Floridians’ motion for rehear *412 ing. Floridians filed this appeal pursuant to section 120.68, Florida Statutes (1991).
In this appeal, Floridians asserts that: 1) the Commission’s decision is not supported by competent, substantial evidence; 2) the Commission’s order should be remanded to correct material errors in procedure that affected the correctness of the Commission’s action and the fairness of the proceedings; and 3) the Commission misconstrued section 403.519. For the reasons expressed, we reject all of Floridians’ arguments.
Section 403.519, Florida Statutes (1991), states:
In making its determination, the commission shall take into account the need for electric system reliability and integrity, the need for adequate electricity at a reasonable cost, and whether the proposed plant is the most cost-effective alternative available. The commission shall also expressly consider the conservation measures taken by or reasonably available to the applicant or its members which might mitigate the need for the proposed plant and other matters within its jurisdiction which it deems relevant.
The Commission’s order clearly discusses, in detail, each factor required by the statute. In its conclusion, the Commission stated:
We believe that TECO’s petition satisfies the statutory requirements of section 403.519, Florida Statutes. The addition of 150 MW in 199[5] and 70 MW in 1996 will serve TECO’s capacity needs and contribute to meeting its reliability criteria of 0.1 days/year LOLP [Loss of Load Probability] and 20% winter reserve margin. Phased-in capacity from Polk Unit One is consistent with the needs of Peninsular Florida, and will provide a portion of the additional generation capacity needed between 1995 and 1997 for the peninsula to maintain an adequate level of reliability. As a result of receiving $120 million in funding from DOE, TECO’s proposed IGCC facility is the most cost-effective generation alternative. TECO estimates its proposed plant will save customers $195 million over the life of the unit, compared to the next best (most cost-effective) alternative. Operation of the IGCC unit will allow TECO to back down the dispatch of dirtier units, thereby assisting TECO with compliance with Phase II requirements of the Clean [Air Act]. It appears that further timely and cost effective conservation measures cannot reliably defer the need for the IGCC unit.
(Emphasis added.) In reaching each of these conclusions, the Commission made detailed findings of fact relative to the criteria found in section 403.519. We find that the Commission’s findings and conclusions in regard to each of the statutory criteria in section 403.519 are clearly presented in the Commission’s order and are supported by competent, substantial evidence.[2] See Citizens of Florida v. Public Service Commission, 435 So.2d 784 (Fla.1983).
We also disagree with Floridians’ assertion that the Commission misconstrued the terms “mitigate” and “cost-effective” in section 403.519. The Commission is the primary forum for determination of need under Florida’s Electrical Power Plant Siting Act. Nassau Power Corp. v. Beard, 601 So.2d 1175 (Fla.1992). “[T]he construction placed on a statute by the agency charged with the duty of executing and interpreting it is entitled to great weight.” Id. at 1178 n. 9; see also P.W. Ventures, Inc. v. Nichols, 533 So.2d 281 (Fla.1988). This Court will not depart from such a construction unless it is clearly erroneous. Daniel v. Florida State Turnpike Auth., 213 So.2d 585 (Fla.1968); Cohen v. School Board, 450 So.2d 1238 (Fla. 3rd DCA 1984); Bureau of Crimes Compensation v. Reynolds, 443 So.2d 501 (Fla. 3rd DCA 1984). We find that the Commission’s construction of these terms is not clearly erroneous.
Accordingly, we affirm the order of the Public Service Commission certifying the *413 need for Tampa Electric Company s proposed IGCC generating unit.
BARKETT, C.J., and McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.

. Art. V, § 3(b)(2), Fla. Const.

. We note that in the appendix to its order, the Commission expressly stated either its acceptance or rejection of each of Floridians’ proposed findings of fact and conclusions of law.