JOHNSON, Chief Judge.
The appellee brought a mandamus action against the Chairman and members of the Florida State Racing Commission and Miami Beach Jockey Club, Inc., the appellants herein, in which action the relief sought was the revocation of a permit to conduct summer thoroughbred horse racing issued by the Florida State Racing Commission to Miami Jockey Club, Inc.
The lower court, after considering the pleadings and arguments of counsel for the respective parties, found that the only legal issues raised in this proceeding which were argued on the motion of the re *97 spondent Miami Beach Jockey Club, Inc. for judgment on the pleadings, were:
A. The sufficiency of the title to Chapter 69-14, Laws of Florida.
B. Whether or not the action of the commission in granting the permit here under attack without requiring a referendum is valid.
C. Whether or not said act is invalid by reason of an arbitrary classification of the area.
As to the first point supra, the trial court held that the title of Chapter 69-14, does not violate the constitutional requirements for sufficient notice of the subject matter of the act. With this conclusion we agree.
As to the third point supra, the relator’s contention that the act is invalid by reason of an arbitrary classification of the area, and therefore in violation of subsections (2) and (12) of Section 11 of Article III of the Constitution of Florida, F.S.A., the trial court found to be without merit and with this we agree.
The second and the really material legal issue was found by the trial court to be whether or not the action of the Commission in granting the permit here under attack without requiring a referendum rendered the said permit invalid. The trial court held said permit to be invalid because no referendum was required therein as required by F.S. Section 550.05(2), F.S.A. Based on this finding of law, the Court issued its peremptory writ of mandamus, from which this appeal is taken.
In order to determine the correctness of the trial court’s ruling on this latter point, we must analyze F.S. Chapter 550, F.S.A. as it was prior to the enactment of Chapter 69-14, Laws of Florida, 1969, and the effect said Chapter 69-14 had thereon.
The law authorizing racing, from the inception of the legalized pari-mutuel betting, up through the amendments thereof as late as 1957, as found in Section 550.05, provided that applications for a permit to conduct race meetings should be made between June 1 and July 1 of each year, and provided inter alia, that no permit should be effectual to authorize any race until ratified by a majority of the voters participating in said election. This section of the statute also prohibits the racing commission from considering an application or issuing a permit and from permitting a vote upon the question in any county to conduct horse races at a. location within one hundred miles of another location for which a permit has been issued, “except that permits heretofore issued and ratified * * * shall not be affected by this proviso.” This section was last amended in 1957 and stands unchanged since then. So if we adhere to the strict letter of Section 550.05, the racing commission would be powerless to issue a permit or to allow a referendum in the area in question, unless Chapter 69-14 Laws of 1969, authorizes a new procedure to be followed as the same pertains to summer racing. Therefore Chapter 69-14, if the construction thereof as contended for by appellee is correct, would mean absolutely nothing, because no permit for summer racing in the affected area— where there are three or more tracks located within a radius of 100 miles — could be issued, and no election could be held because of the prohibitions contained in 550.05. The court cannot hold that one sentence of the section of the statute is applicable and another sentence not applicable. If Section 550.05 is applicable to summer racing permits in areas where there are 3 or more horse tracks, as created by Chapter 69-14, then the permit in question would not only be invalid for lack of a ratification, but for lack of authority for the Commission to even consider an application. To hold thusly would be to completely nullify Chapter 69-14 and render it meaningless. We do not believe the Legislature intended to go through useless motions in the passage of Chapter 69-14.
*98 The appellee points out in his brief that the portion of Section 550.05 requiring ratification by referendum was not expressly amended by any terms of Chapter 69-14. With this we agree because it is apparent that the Legislature was dealing with a new business in a limited area, only, in which area permits for thoroughbred horse racing had been ratified, and the new business of summer racing was only tantamount to an extension of the racing into a new summer season, as indicated by the use of the words, “an additional 120 days.” The wording of the Chapter 69-14, clearly ■points out that the Racing Commission may issue the permit, and that the holder of such permit shall be permitted to race {Sec. 550.41).
The lower court pointed out that all racing under Chapter 550, prior to Chapter 69-14, had uniformly required ratification. This statement is partly erroneous, inasmuch as Section 550.37 authorized harness tracks racing without an election in a county where two or more elections had been held in which a majority of the electors voting favored operation of parimutuel pools. This was done by the Legislature of 1963, and said act held valid by the Florida Supreme Court, and there was no ratification of the particular permit there involved. This latter point is not too material to the issue involved in the case sub judice, except to point up the fact that the Legislature can legally authorize the issuing of a permit and license under certain circumstances without an election. Said Chapter 69-14 specifies in the title thereof that one of the purposes of said act was “to create a one hundred twenty (120) day annual summer thoroughbred horse racing season and to authorize the State Racing Commission to issue an additional permit for such summer thoroughbred horse racing.” (Emphasis supplied.)
Said chapter also provides that all conflicting laws are repealed. Also, Section 550.46 provides that F.S. Chapter 550, F.S.A. shall be applicable “except those provisions thereof which hre inconsistent herewith.” The provisions of 550.05 are inconsistent with Chapter 69-14. The Legislature in its wisdom, added new sections to the existing racing statute, numbered F.S. 550.40, 550.41, 550.42, 550.43, 550.44, 550.45, 550.46 and 550.47.
In Section 550.40, the Legislature set forth a new legislative policy, authorizing summer’ thoroughbred horse racing. Emphasis was laid upon the fact that summer racing was a new business substantially different from winter thoroughbred horse racing and that this enactment was made for the purpose of carrying out such policies.
It is significant to note the differences in the wording of statute 550.41 and 550.05. In 550.41, the Legislature said:
“(1) Where there are three (3) or more thoroughbred horse race tracks operating under valid outstanding permits issued by the State Racing Commission located withini a radius of one hundred (100) miles of each other, the State Racing Commission may issue a new permit for summer thoroughbred horse racing only. Such new permit holder within the area shall be permitted during the period beginning on May 6th and ending on or before November 12th of each year to conduct an additional one hundred and twenty (120) days of thoroughbred horse racing between the hours of 12 noon and 6 :00 P.M. Eastern Standard Time or Daylight Saving Time, exclusive of Sundays, upon dates allocated to it by the commission, which additional period of racing shall be known as the ‘summer thorougbred horse racing period’ * * * ” (Emphasis supplied.)
There is no mention that the permit shall “not be effectual” until ratified as provided in Section 550.05. To the contrary, the statute says the Commission may issue a new permit and such new permit holder within the area (where *99 there are 3 or more tracks) shall be permitted to conduct an additional 120 days of racing. It seems clear to us that the Legislature was setting up a new criteria for an extension of racing into the summer, only in the prescribed area.
The language employed, namely: “ * * to conduct an additional one hundred twenty * * * ” seems to us to negate the necessity for ratification, especially when viewed in the light of the language of Sections 550.05 and 550.07 wherein in each section it is expressly provided that the permits in question there, had to be ratified. Neither of the two latter sections could have been dealing with the summer racing as created by Chapter 69-14, Acts 1969.
To further support the theory that a ratification was not intended to be required, Chapter 69-14, now 550.43 provided the dates for applying for permit for summer racing, which dates are different from the dates set in Section 550.05 for winter racing, and expressly provided a mandatory directive to the State Racing Commission to issue a license authorizing the permit holder to conduct a racing meet during the summer. Again, the Legislature did not require ratification before issuance of a license.
We do not follow the trial court’s reasoning nor that of the appellants that Section 550.05 requiring ratification has been or has not been amended by implication. We do not think such a question has any merit at all, either for or against the appellant. It is not an applicable point to be considered. There is no indication of any implied amendments. There is a direct, explicit mandate to the State Racing Commission to issue the permit upon application and that upon such permit being granted, a license “shall issue.” No further requisites are called for before issuing the permit for the particular area in question. We think that perhaps the lower court overlooked the fact that Chapter 69-14 was limited in its area of application to one location — namely, where there are already 3 or more tracks operating. Section 550.05 and 550.07 were dealing with applications for permits in general in any section of the state.
Sections 550.40, 550.41, 550.42, 550.43, 550.44, 550.45, 550.46 and 550.47 may properly be considered as a new type of racing —a new business and a completely new set of rules and prerequisite for permits and licenses, and these subsections are affirmative in their directives to the Racing Commission.
For the reasons pointed out supra, and the distinctions made as between the specific regulations for issuing permits in general and under certain limited conditions, we are of the opinion and so hold, that the trial court was in error in holding the permit in question to be invalid for lack of ratification, and that the order granting the peremptory writ of mandamus should be and it is hereby reversed, and the writ quashed and said cause remanded to the lower court with the instruction to forthwith enter an order declaring the permit in question valid and no election necessary for ratification thereof.
CARROLL, DONALD K. and SPEC-TOR, JJ., concur.