QUESTION: Is the Board of Business Regulation authorized by ss. 20.16 and 550.41-550.46, F. S., to mandate Calder Race Course, Inc., a full season of 120 racing days for the 1976 summer thoroughbred season when Calder has applied for permission to race only 106 days and has contended that the board is without power to award more days?
SUMMARY: The Board of Business Regulation lacks the authority to mandate a permitholder that has applied for a 106-day summer thoroughbred racing season pursuant to s. 550.43, F. S., to conduct a 120-day summer thoroughbred racing season. According to the facts submitted, a pari-mutuel permitholder that conducts summer thoroughbred horseracing has applied, due to economic reasons, for a 106-day summer racing meet rather than the full season of 120 days. The State of Florida receives, based upon past revenue collections, approximately $54,000 per day in state revenue from the track's operation. No other track is presently authorized to conduct a summer thoroughbred racing meet. Section 550.41, F. S., authorizes a summer thoroughbred horseracing period: Such new permitholder within the area shall be permitted, during the period beginning on May 6 and ending on or before November 12 of each year, to conduct an additional 120 days of . . . racing . . . upon dates allocated to it by the Board of Business Regulation . . . . (Emphasis supplied.) See Miami Beach Jockey Club, Inc. v. State ex rel. Willis, 227 So.2d 96 (1 D.C.A. Fla., 1969). Additional charity and scholarship days are authorized to be approved by the board pursuant to s. 550.41(4)- (8). Sections 20.16(5), 550.011, and 550.41, F. S., grant the board exclusive authority to "hear and approve the dates for racing" and, in this instance, the Division of Pari-Mutuel Wagering shall issue, on or before March 1, a license authorizing the permitholder to conduct a summer thoroughbred racing season. Sections 20.16 and 550.43, F. S.; Hialeah Race Course, Inc. v. Board of Business Regulation,270 So.2d 366 (Fla. 1972). A track "desiring to conduct summer thoroughbred racing may file in writing with the Board of Business Regulation its application for permission to conduct a thoroughbred horse race meeting for a period not to exceed 120 days . . . ." (Emphasis supplied.) Section 550.43, F. S. Once this application for dates has been received, the board may exercise its discretion to approve the dates. Section 550.45, F. S., grants the board authority to allocate or assign to another approved track any dates "which have not been applied for" and to reallocate or reassign to another approved track any dates or days that have been "abandoned, surrendered, or will not be used for any reason whatsoever." Also, the statute expressly states that the failure of a track to apply for dates in one year will not preclude an application in subsequent years. A very similar issue was presented in State ex rel. Biscayne Kennel Club v. Stein,178 So. 132 (Fla. 1938), under a statute that "permitted" 90 days of greyhound racing at a track. Biscayne, due to financial inability, contended that it could not operate a full 90- day season, and the court approved a shorter season: "It is optional with it (track) to race the 72 days or 90 days if it so desires." 178 So. at 137. Approval of charity and scholarship dates pursuant to statutes which require the permitholder to apply and to agree to conduct dates presents an analogous situation. In State ex rel. Gulfstream Park Racing Association v. Florida State Racing Commission,70 So.2d 375 (Fla. 1953), the court concluded to place the discretion in the track or permitholder: It (the date) is done upon application and agreement by any track and donation of the profits is permissive or voluntary rather than mandatory. The language of the statute is permissive, there is nothing compulsory about the extra day's racing. [70 So.2d at 379.] Section 550.43, F. S., similarly states that a permitholder "may file" an application to conduct summer thoroughbred racing "for a period not to exceed 120 days." The express discretionary terms of this statute authorize the permitholder to apply for any number of days less than 121 and create no statutory duty to apply for or conduct a full 120-day season. The suggestion that a pari-mutuel permit carries with it the concurrent obligation to enhance state revenue has been recognized by the judiciary, but not in a date assignment or permit revocation or suspension situation, and the permit is judicially considered to be a mere license, not a franchise. Gulfstream Park Racing Association, Inc. v. Board of Business Regulation, 318 So.2d 458 (1 D.C.A. Fla., 1975) cert. denied323 So.2d 290 (Fla. 1975); West Flagler Association, Ltd. v. Board of Business Regulation, 241 So.2d 369, 376 (Fla. 1970); Wilson v. Sandstrom, 317 So.2d 732 (Fla. 1975); Hialeah Racecourse, Inc. v. Gulfstream Park Racing Association, (Fla. 1971); Hubel v. West Va. Racing Commission, 513 F.2d 243 (4 Cir. 1975). The state's goal of maximizing production of tax revenue was implicitly recognized in Calder Race Course, Inc. v. Board of Business Regulation,319 So.2d 67 (1 D.C.A. Fla., 1975). In Calder, the court found that the absence of state revenue from a pari-mutuel holder for a 9-day period constituted a sufficient state interest to premise emergency board action in reassigning concurrent dates for the West Flagler Greyhound Track and the Calder Race Course. As persuasive as the state revenue collection interest may be, the Legislature has couched the statute in permissive or discretionary terms. Absent further judicial or legislative clarification, the Board of Business Regulation may not mandate that a permitholder conduct a 120-day summer thoroughbred racing season pursuant to s. 550.43, F. S., if the permitholder has applied for less than that number. State ex rel. Associated Outdoor Clubs v. Lechner,197 So.2d 512 (Fla. 1967). This determination does not, however, reflect upon the request of and assignment of dates for the winter thoroughbred horse racing season pursuant to s. 550.081, F. S.