516 So.2d 249 (1987)
PALM HARBOR SPECIAL FIRE CONTROL DISTRICT, Appellant,
v.
Celestine KELLY, Appellee.
No. 70119.
Supreme Court of Florida.
December 3, 1987.
Thomas M. Gonzalez and Robin E. Greiwe of Thompson, Sizemore & Gonzalez, P.A., Tampa, for appellant.
Joseph H. Kaplan and Susan E. Hicks of Kaplan, Sicking & Bloom, P.A., Miami, for appellee.
*250 BARKETT, Justice.
We have on appeal Palm Harbor Special Fire Control District v. Kelly, 500 So.2d 1382 (Fla. 2d DCA 1987), which held unconstitutional section 447.04(1)(a), Florida Statutes (1985).[1] Jurisdiction is mandatory. Art. V, § 3(b)(1), Fla. Const. We affirm.
Celestine Kelly, a non-citizen, applied for a license to act as business agent for the Palm Harbor Fire Fighters Union, which represents appellant's employees. Appellant and several other entities opposed the application on grounds of Kelly's lack of citizenship. The Florida Department of Labor and Employment Security, Division of Labor, Employment and Training ("Department") granted Kelly a license, citing section 455.10, Florida Statutes (1985),[2] as grounds for this action. In effect, the Department's final order held that section 455.10 implicitly had repealed section 447.04(1)(a) and the alienage restriction it contains.
On appeal, the Second District affirmed, but not on the basis of section 455.10. Instead, the district court concluded that rules of statutory construction prevented the application of section 455.10 to the question at hand because section 447.04(1)(a) clearly governed the licensing of business agents. After reaching this conclusion, the district court affirmed the Department's action on the ground that section 447.04(1)(a) violated equal protection.
Initially, we reject appellee's argument that the district court erred in not adopting the rationale used by the Department in this action. We agree with appellee that deference usually will be accorded an administrative agency's interpretation of matters entrusted by statute to its discretion or expertise. Public Employees Relations Commission v. Dade County Police Benevolent Association, 467 So.2d 987 (Fla. 1985); Daniel v. Florida State Turnpike Authority, 213 So.2d 585 (Fla. 1968). However, this deference is not without limit.
In this case the Department specifically found that section 455.10 was in direct conflict with, and had repealed by implication, section 447.04(1)(a):
The Legislature is presumed to know what laws it has previously enacted. It must be concluded, therefore, that, if the 1979 Session of the Legislature had desired to retain the citizenship requirement for Business Agents, it would have enacted an exception to Section 455.10 for that class.
However, it is axiomatic that an administrative agency has no power to declare a statute void or otherwise unenforceable. Dade County v. Overstreet, 59 So.2d 862 (Fla. 1952); State ex rel. Fronton Exhibition Co. v. Stein, 144 Fla. 387, 198 So. 82 (1940). We thus conclude that the district court was under no obligation to defer to an agency interpretation that resulted in a statute being voided by administrative fiat.
On the merits of this initial question, we also agree with the Second District that section 447.04(1)(a) cannot be construed as implicitly repealed by the revision made to section 455.10 in 1979. It is well settled in Florida that the courts will disfavor construing a statute as repealed by implication unless that is the only reasonable construction. Woodgate Development Corp. v. Hamilton Investment Trust, 351 So.2d 14 (Fla. 1977); Tamiami Trail Tours, Inc. v. Tampa, 159 Fla. 287, 31 So.2d 468 (1947). The courts' obligation is to adopt an interpretation that harmonizes two related, if conflicting, statutes while giving effect to both, since the legislature is presumed to pass subsequent enactments with full awareness of all prior enactments and an intent that they remain in force.[3]Carawan *251 v. State, 515 So.2d 161, 168 (Fla. 1987); Wakulla County v. Davis, 395 So.2d 540, 542 (Fla. 1981); State ex rel. School Board of Martin County v. Department of Education, 317 So.2d 68, 72 (Fla. 1975).
Moreover, a statute such as section 447.04(1)(a), covering a specific subject, is controlling over a statute such as section 455.10 that applies to a general class of subjects; in effect, the specific statute operates as an exception to the general. Adams v. Culver, 111 So.2d 665, 667 (Fla. 1959); Stewart v. Deland-Lake Helen Special Road & Bridge District, 71 Fla. 158, 71 So. 42 (1916); State ex rel. Loftin v. McMillan, 55 Fla. 246, 55 Fla. 246, 45 So. 882 (1908). We therefore approve the analysis and conclusions of the district court in construing the statutes in question to give effect to both.
We now turn to the equal protection issue. It is well settled under federal and Florida law that all similarly situated persons are equal before the law. McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Haber v. State; 396 So.2d 707 (Fla. 1981); Soverino v. State, 356 So.2d 269 (Fla. 1978). Moreover, without exception, all statutory classifications that treat one person or group differently than others must appear to be based at a minimum on a rational distinction having a just and reasonable relation to a legitimate state objective. In re Greenberg's Estate, 390 So.2d 40 (Fla. 1980), appeal dismissed sub nom Pincus v. Estate of Greenberg, 450 U.S. 961, 101 S.Ct. 1475, 67 L.Ed.2d 610 (1981); Graham v. Ramani, 383 So.2d 634 (Fla. 1980); Department of Health & Rehabilitative Services v. Heffler, 382 So.2d 301 (Fla. 1980).
However, statutes are regarded as inherently "suspect" and subject to an additional "heightened" judicial scrutiny if they impinge too greatly on fundamental constitutional rights, either under the federal or Florida Constitutions, or if they primarily burden certain groups that have been the traditional targets of irrational, unfair and unlawful discrimination. Florida High School Activities Association, Inc. v. Thomas, 434 So.2d 306 (Fla. 1983); Estate of Greenberg; Ramani. The classifier contained in section 447.04(1)(a) involves alienage, one of the traditional suspect classes. Ramani. It therefore is subject to strict judicial scrutiny under both the fourteenth amendment's Equal Protection Clause, Bernal v. Fainter, 467 U.S. 216, 219, 104 S.Ct. 2312, 2315, 81 L.Ed.2d 175 (1984); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); Ramani, and under article I, section 2 of the Florida Constitution.[4] We recognize, in harmony with federal case law on this subject, that classifications based on alienage are inherently suspect under Florida law, Ramani, since aliens as a class are "a prime example of a `discrete and insular' minority ... for whom such heightened judicial solicitude is appropriate." Graham v. Richardson, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971).
A statute that classifies on the basis of alienage, to be valid, must be designed to advance a compelling state interest by the least restrictive means available. Bernal, 467 U.S. at 219, 104 S.Ct. at 2315. As both parties concede, section 447.04(1)(a) clearly fails this test. The mere fact of alienage does not of itself render a person unfit to be a business agent, nor have the parties to this action advanced such a claim. We therefore conclude that, in the absence of an applicable exception to strict scrutiny, section 447.04(1)(a) would be facially unconstitutional under the fourteenth amendment and article I, section 2 of the Florida Constitution.
Appellant argues that such an exception exists under the "political function" test of Sugarman v. Dougall, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973), and its progeny. This line of cases permits the state to require citizenship as a condition *252 for holding certain positions of public trust. As stated by the Supreme Court,
The rationale behind the political-function exception is that within broad boundaries a State may establish its own form of government and limit the right to govern to those who are full-fledged members of the political community. Some public positions are so closely bound up with the formulation and implementation of self-government that the State is permitted to exclude from those positions persons outside the political community, hence persons who have not become part of the process of democratic self-determination.
Bernal, 467 U.S. at 221, 104 S.Ct. at 2316.
We find that the rationale underlying the political function exception also comports with the essential requirements of article I, section 2 of the Florida Constitution. This section explicitly guarantees all natural persons equality before the law and recognizes that a basic right protected by the law is the opportunity to be rewarded for industry. However, nothing in the Florida Constitution prevents the state from restricting avenues of self government to those persons who have become full members of this state's political community. The only requirement is that the alienage restriction so employed must be tailored carefully to that end, so as not to bar aliens from any opportunity essentially economic in nature, which thus would fall within the protection of article I, section 2.
Based on this dichotomy between economic opportunity and the opportunity to participate in self-government, the federal political function exception involves a twopart test designed to determine whether a particular job or other position may be subject to an alienage restriction:
First, the specificity of the classification will be examined: a classification that is substantially overinclusive or underinclusive tends to undercut the governmental claim that the classification serves legitimate political ends... . Second, even if the classification is sufficiently tailored, it may be applied in the particular case only to "persons holding state elective or important nonelective executive, legislative, and judicial positions," those officers who "participate directly in the formulation, execution, or review of broad public policy" and hence "perform functions that go to the heart of representative government."
Cabell v. Chavez-Salido, 454 U.S. 432, 440, 102 S.Ct. 735, 740, 70 L.Ed.2d 677 (1982) (quoting Sugarman, 413 U.S. at 647, 93 S.Ct. at 2850). The Supreme Court has further noted that participating in public policy matters occurs when a person is
invested either with policymaking responsibility or broad discretion in the execution of public policy that requires the routine exercise of authority over individuals.
Bernal, 467 U.S. at 226, 104 S.Ct. at 2319. We find that this test also harmonizes with the explicit guarantees of article I, section 2 of the Florida Constitution.
Appellant asserts that business agents hired by public labor organizations meet the second part of the political functions test both directly and derivatively, as agents of public employees. We disagree.
Business agents, considered purely in their work capacity, are not public officers or employees who participate directly in the formulation of policy or who exercise the state's authority over individuals. Section 447.02(2), Florida Statutes, defines "business agent" as
any person, without regard to title, who shall, for a pecuniary or financial consideration, act or attempt to act for any labor organization in:
(a) The issuance of membership or authorization cards, work permits, or any other evidence of rights granted or claimed in, or by, a labor organization; or
(b) Soliciting or receiving from any employer any right or privilege for employees.

(Emphasis added.) Thus, a business agent's contact with public policy is at most indirect, consisting of asserting the employees' interests before those who ultimately comprise the policymaker. Moreover, under the statute, any authority a business *253 agent wields is not state authority, since his obligation is only to represent the private interests of a group of employees.
For the same reason, we also cannot agree that business agents may fall within the exception derivatively, as agents of other public employees. Appellant's argument overlooks the fact that, under Florida common law, even a general agent does not stand in the shoes of his principal in all ways whatsoever. An agent's power and authority are entirely dependent on the scope of the business for which his principal has employed him or apparently employed him. City of Miami v. Simpson, 172 So.2d 435 (Fla. 1965); Dunwoody v. Saunders, 50 Fla. 202, 39 So. 965 (1905); Friedman v. Mutual Broadcasting System, Inc., 380 So.2d 1313 (Fla. 3d DCA 1980), cert. denied, 388 So.2d 1112 (Fla. 1980); Owen Industries, Inc. v. Taylor, 354 So.2d 1259 (Fla. 2d DCA 1978). In the case at hand, the agent's ambit of responsibility is precisely defined by the statute, which vests him neither with state authority nor with public policymaking duties. Thus, in all activities for which the state license is required, a business agent can never meet the second prong of the political function test.
Nor is there any support for appellant's argument in the federal case law. The question before us today does not involve the police power, which clearly falls within the exception. Foley v. Connelie, 435 U.S. 291, 98 S.Ct. 1067, 55 L.Ed.2d 287 (1978). Nor does it involve a responsibility similar to that of schoolteachers, who exercise state-sponsored discretion over their students. Ambach v. Norwick, 441 U.S. 68, 99 S.Ct. 1589, 60 L.Ed.2d 49 (1979). Indeed, the business agent of a public employees' union possesses less public authority than did the state notaries in Bernal or attorneys in In re Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). In these two cases, the Supreme Court struck alienage restrictions despite the fact that both classes in question were vested with state authority to administer oaths under penalty of perjury. Accord Ramani. We therefore hold that business agents, as defined by statute, do not meet the second prong of the political function test.
Accordingly, we approve the Second District's conclusions on the patent overinclusiveness of section 447.04(1)(a) and reject appellant's request that we restrict the statute to a constitutionally permissible class of business agents. While we acknowledge our duty to preserve the constitutionality of statutes wherever possible, Tal-Mason v. State, 515 So.2d 738 (Fla. 1987); Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981, 988 (Fla. 1981); State v. Keaton, 371 So.2d 86, 89 (Fla. 1979); Sarasota County v. Barg, 302 So.2d 737, 741 (Fla. 1974), we conclude that no interpretation is possible that will achieve that result here.
For the reasons expressed herein, we hold that section 447.04(1)(a) facially violates the Equal Protection Clause of the fourteenth amendment and article I, section 2 of the Florida Constitution. We recede from Hill v. State ex rel. Watson, 155 Fla. 245, 19 So.2d 857 (1944), reversed on other grounds, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782, rehearing denied, 326 U.S. 804, 66 S.Ct. 11, 90 L.Ed. 489 (1945), to the extent it may be interpreted as approving the alienage restriction contained in section 447.04(1)(a). We reject the first part of Attorney General Opinion 073-6, dated January 16, 1973, which argued that the alienage restriction was enforceable under Florida law. The district court is affirmed.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW and KOGAN, JJ., concur.
NOTES
[1] Section 447.04, Florida Statutes (1985), provides:

(1) No person shall be granted a license or a permit to act as a business agent in the state:
(a) Who is not a citizen of the United States.
[2] Section 455.10 provides:

No person shall be disqualified from practicing an occupation or profession regulated by the state solely because he is not a United States citizen.
[3] This presumption nevertheless can be defeated by plain evidence of a contrary legislative intent.
[4] Article I, section 2, provides in pertinent part:

All natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; ...