704 So.2d 152 (1997)
SECRETARY OF STATE, Sandra B. Mortham, et al., Appellants,
v.
Robert F. MILLIGAN, et al., Appellees.
No. 97-1249.
District Court of Appeal of Florida, First District.
December 8, 1997.
*153 Donald L. Bell, General Counsel, David A. Tepper and Gerald T. York, Assistant General Counsel, Tallahassee, for appellant Secretary of State Sandra B. Mortham.
Paul Hawkes, Tallahassee, for appellant Florida House of Representatives.
Harry Hooper, General Counsel, and Robert Beitler, Chief Counsel, Tallahassee, for appellee Robert F. Milligan, Comptroller.
J. Hardin Peterson, General Counsel and Thomas Crapps, Tallahassee, for appellee Lawton Chiles, Governor.
BARFIELD, Chief Judge.
Appellants seek review of a circuit court order in which the trial judge concluded that termination of the Election Campaign Financing Trust Fund (Trust Fund) pursuant to article III, section 19(f) of the Florida Constitution and sections 215.3206 and 215.3208, Florida Statutes (1995), did not relieve the Secretary of State (Secretary) of the duty to: 1) certify candidates' eligibility for public campaign financing; 2) determine the amount of moneys the eligible candidates are to receive; and 3) collect and deposit filing fees, election assessments, fines, penalties, and voluntary contributions. We affirm.
In 1986, the legislature enacted the Florida Election Campaign Financing Act (Act). §§ 106.30-106.36, Fla. Stat. As noted by the trial judge below:
The Act is a comprehensive statutory scheme which contains the following provisions: 1) the legislature's findings and intent behind the enactment of public campaign financing; 2) the establishment of a trust fund to be utilized in the Act's administration; 3) the procedures for requesting public campaign financing; 4) the requirements for determining a candidate's eligibility to receive public campaign financing, including a candidate's agreement to abide by expenditure limits set by the Act and limits on contributions; 5) the method of distributing public campaign financing funds through matching contributions; 6) restrictions on a candidate's obligation of public campaign funds before the funds are deposited into the campaign account; 7) a requirement that the Division of Elections distribute funds within 7 days after close of qualifying and every 7 days thereafter; 8) the requirement that the Division of Elections adopt rules for providing weekly reports, certification and distribution of public campaign funds; 9) the requirement that a candidate, who is not participating in public campaign financing but abiding by the expenditure limits, file an irrevocable statement with the Secretary of State, and penalties if that candidate exceeds the limits; 10) a provision that if a non-participating candidate does not abide by the expenditure limits, then participating candidates may receive additional matching funds to the extent the non-participating candidate exceeded the expenditure limits; and 11) penalties for participating candidates who unlawfully exceed the expenditure limits and false report qualifying contributions.
(Footnotes omitted).
At the time the action for declaratory judgment was filed, the Act provided that proceeds from filing fees and assessments pursuant to sections 99.092, 99.093, 105.031, 106.04, 106.07, and 106.29 shall be deposited *154 into the Trust Fund as designated in those sections.[1] § 106.32(2) & (3), Fla. Stat. (1995). Section 106.265, Florida Statutes (1995), provided that the Florida Elections Commission was authorized to impose civil penalties upon the finding of a violation of chapter 106, and that any civil penalty collected shall be deposited into the Trust Fund. The legislature also provided for voluntary contributions to the Trust Fund.[2] In addition to these sources of funding for the Trust Fund, section 106.32(1) provided:
... If necessary, each year in which a general election is to be held for the election of the Governor and Cabinet, additional funds shall be transferred to the Election Campaign Financing Trust Fund from general revenue in an amount sufficient to fund qualifying candidates pursuant to the provisions of ss. 106.30-106.36.
In 1992, upon the recommendation of the Florida Tax and Budget Reform Commission (Commission), the Florida voters adopted a constitutional amendment which provides that all trust funds in the State Treasury, except certain exempt funds, shall terminate within four years unless the legislature acts to affirmatively retain the trust fund. Art. III, § 19(f)(2), Fla. Const. The Commission's resolution regarding the purpose of the amendment stated:
[O]ver 50% of the Approved Budget for fiscal year 1990-91 was from trust funds.... In the last ten years, the percentage of trust fund appropriations has increased from 48% to 60% of the state budget and the percentage of the General Revenue Fund appropriations has decreased from 52% to 38%. However, the Commission found that the General Revenue Fund serves as the primary reporting vehicle for government operations. Thus, the hundreds of trust funds currently in existence serve only to make reporting the actual revenues and finances of the state virtually impossible. Legally adopted budgets and formal budgetary guidelines and formal budget integration are not always required for trust funds.... In order to achieve the goal of clarity in the budget process, when statutes require the adoption of an annual appropriation, the appropriation should be made from the General Revenue Fund, rather than from a trust fund.
It is the Commission's intent that all but selected trust funds be abolished. All cash balances and income from abolished trust funds should be transferred to the General Revenue Fund. Subject to the will of the Legislature, segregated accounts could be maintained within the General Revenue Fund for receipt of earmarked monies originally designated for particular trust funds, for the purpose of tracking the sources from which such monies come. However, after those monies have been *155 received into these segregated accounts in the General Revenue Fund, the monies should be commingled in the General Revenue Fund for the purpose of the appropriation process. In no sense are these segregated accounts to be deemed somehow outside of the regular accounting and appropriations procedures.
It is not the Commission's intent that the purpose for which a trust fund was established be eliminated. Rather, it is the Commission's intent to provide for a more transparent budget by simply moving the funds from "trust funds" into the General Revenue Fund, where the funds can be more easily monitored according to generally accepted principles of accounting. The Legislature should require the modification of the state's accounting system accordingly to allow for the use of the segregated accounts to receive the earmarked monies. The purposes for which monies are earmarked may be amended by the Legislature. The Commission therefore intends that existing trust funds, with certain exceptions, terminate within four years or less, as determined by the Legislature.
. . . . .
It is the intent of the Commission to reduce the number of trust funds in order to place most of the revenue of the state in the General Revenue Fund where it is more visible. It would result in the Legislature having more flexibility in establishing and funding the priorities of the state as those priorities change over time.... It is the overall intent of the Commission that most trust funds be eliminated to increase the ability of the citizens of Florida to understand where money for state expenditures comes from, how that money is appropriated, what goals are being met by that appropriation, and how that money is eventually spent. Elimination of trust funds will help ensure that all monies go first into the General Revenue Fund to be appropriated by the Legislature. This streamlined process would allow Florida citizens to make better and more informed judgments as to how their money is spent by the state.
Section 215.32 provides for segregation of state funds into the general revenue fund, trust funds, and working capital fund. It provides:
(2)(b)1. The trust funds shall consist of moneys received by the state which under law or under trust agreement are segregated for a purpose authorized by law. The state agency or branch of state government receiving or collecting such moneys shall be responsible for their proper expenditure as provided by law....
. . . . .
3. All such moneys are hereby appropriated to be expended in accordance with the law or trust agreement under which they were received, subject always to the provisions of chapter 216 relating to the appropriation of funds and to the applicable laws relating to the deposit or expenditure of moneys in the State Treasury.
In response to the constitutional amendment, the legislature enacted section 215.3206, which provides:
(1) Prior to the regular session of the Legislature immediately preceding the date on which any executive or judicial branch trust fund is scheduled to be terminated, pursuant to the provisions of s. 19(f), Art. III of the State Constitution, or such earlier date as the Legislature may specify, the agency responsible for the administration of the trust fund and the Governor, for executive branch trust funds, or the Chief Justice, for judicial branch trust funds, shall recommend to the President of the Senate and the Speaker of the House of Representatives whether the trust fund should be allowed to terminate or should be re-created. Each recommendation shall be based on a review of the purpose and use of the trust fund and a determination of whether the trust fund will continue to be necessary. A recommendation to re-create the trust fund may include suggested modifications to the purpose, sources of receipts, and allowable expenditures for the trust fund....
(2) If the trust fund is terminated and not immediately re-created, all cash balances and income of the trust fund shall be deposited *156 into the General Revenue Fund. The agency or Chief Justice shall pay any outstanding debts of the trust fund as soon as practicable, and the Comptroller shall close out and remove the trust fund from the various state accounting systems, using generally accepted accounting practices concerning warrants outstanding, assets, and liabilities.
Section 215.3208 set forth a schedule for termination of trust funds. Trust funds administered by the Department of State were scheduled for termination in 1996. Bills to re-create the Trust Fund were offered in both the House and Senate during the 1996 legislative session, but died in committee. Accordingly, the Trust Fund terminated on November 4, 1996. The legislature was also presented a bill during the 1996 legislative session to repeal public campaign financing, but the bill was not passed.
On November 4,1996, the Secretary filed a complaint for declaratory judgment in circuit court. The Secretary asserted she was in doubt about her legal rights, duties and responsibilities under the Act, and the rights, duties and responsibilities of the Comptroller. The Secretary asserted that because the Trust Fund was the only statutorily authorized source of funding for candidates under the Act and the Trust Fund would not exist after November 4, 1996, there was no longer any basis for collecting fees, assessments, and penalties designated for deposit into the Trust Fund or for certifying candidates and approving payment of matching funds.
The Secretary noted in the complaint that the Division of Elections had issued an advisory opinion interpreting the Act in light of the legislature's decision to allow the Trust Fund to terminate. The Division took the position that in the absence of the Trust Fund, trust moneys should not be collected from candidates as part of their filing fees, the Division should not certify candidate eligibility, and the Comptroller should not authorize payments to candidates. Advisory Opinion DE 96-03.
The parties agreed that summary judgment was appropriate. The parties also agreed that the issues for resolution were:
1. Whether, in the absence of the Election Campaign Financing Trust Fund, the Election Campaign Financing Act authorizes the Secretary of State to certify candidates and approve the payment of matching funds to qualifying candidates out of the General Revenue Fund, or whether additional legislative action is required; and,
2. Whether, after the termination of the Election Campaign Financing Trust Fund on November 4,1996, the Division of Elections and the Secretary of State may continue to collect filing fees or elections assessments designated to the trust fund under sections 99.092, 99.093,105.031, fines and penalties designated to the trust fund under sections 106.04(8)(a), 106.07(8)(a), and 106.265, Florida Statutes, or contributions made to the trust fund under sections 199.052(14), 320.02(13), 322.08(7)(a), 327.25(11), and 607.1622(1)(h), Florida Statutes.
The trial judge concluded that the Secretary still had the duty to certify candidates and approve the payment of matching funds to qualifying candidates and the duty to collect and deposit the fees, assessments, penalties and contributions designated for deposit into the Trust Fund. The trial judge determined that applying the intent behind article III, section 19(f)(2), it was clear that the Trust Fund's termination did not abolish the comprehensive statutory scheme to provide public campaign financing, but merely modified the statutory scheme. The trial judge concluded that the legislature's purpose in providing public campaign financing is still intact because the legislature did not repeal the Act. The trial judge stated that the "termination pursuant to article III, section 19(f)(2) simply results in the Trust Fund's moneys being moved into General Revenue for accounting purposes.... The continued legislative purpose of providing public campaign financing can reasonably be accomplished by using the valid appropriation set out in section 106.32(1) to provide the amount of funds certified by the Secretary of State from General Revenue to eligible candidates, without the trust fund acting as a `middle-man.'"
*157 The trial judge noted that resolution of whether the Secretary has the duty to continue to collect and deposit amounts designated for deposit into the Trust hinged on the meaning of the provision that "[a]ll cash balances and income of any trust funds abolished under this subsection shall be deposited into the general revenue fund." Art. III, § 19(f)(2). See also § 215.3206(2), Fla. Stat. (1995). The trial judge concluded that the term "income of any trust" should be defined broadly to include all moneys or funding sources originally designated for deposit into the trust fund. The trial judge determined that this broad definition furthered the constitutional purpose of providing the legislature with the greatest flexibility over the funds. She also observed that utilization of this definition was supported by the following findings of the Commission:
the term "trust fund," as currently used in Florida government, is misleading, because trust funds are traditionally used to account for assets held by a government in a trustee or agent capacity for others, not accounts segregated for the receipt of earmarked revenues.
The trial judge concluded the money collected pursuant to statutes which acted as funding sources for the Trust Fund should be deposited into General Revenue.
On appeal, the appellants first argue that the trial judge erroneously failed to defer to the Division of Elections' interpretation of the Act. The appellants note that the Division is charged with administration of the provisions of chapter 106 relating to campaign financing. The appellants assert that the Division's opinion did not repeal the act by implication or otherwise render the act void or unenforceable, but instead merely recognized that the financing mechanism for the Act was not re-created so the campaign financing program is without its funding source and must await legislative action in order to be funded.
We conclude that the trial judge correctly determined that she was under no obligation to defer to the advisory opinion of the Division regarding the effect of termination of the Trust Fund. Contrary to the appellants' assertion, the trial judge correctly found that the Division's interpretation would render the Act inoperative. The Division's interpretation results in voiding all statutes referencing the Trust Fund. For example, the Division's interpretation would result in a portion of qualifying fees and assessments being eliminated despite the fact that the statutory provisions were not amended or deleted. The Division's interpretation would also result in the Florida Elections Commission being unable to impose civil penalties for violations of chapter 106. As noted in Palm Harbor Special Fire Control District v. Kelly, 516 So.2d 249 (Fla.1987), an administrative agency has no power to declare a statute void or otherwise unenforceable and there is no obligation to defer to an agency interpretation that results in a statute being voided by administrative fiat.
The trial judge also correctly found that she was under no obligation to defer to the advisory opinion because it was not limited to the construction of statutes within the purview of the Division, but instead also construed article III, section 19(f) of the Florida Constitution and sections 215.32, 215.3206(2), and 215.3208(4)(a), Florida Statutes. Appellants' reliance on Smith v. Crawford, 645 So.2d 513 (Fla. 1st DCA 1994), is misplaced. In that case, it was determined that the trial court's error lay "primarily in failing to give required deference to the advisory opinion of the Division of Elections, in failing to read all of the provisions of the election statutes in pari materia." It was determined in Smith that the Division's advisory opinion correctly interpreted the relevant statutory provisions of the campaign financing law. It was not necessary in Smith for the Division to interpret statutory provisions outside of chapter 106. That does not hold true in the present case. Although the appellants' correctly note that it was necessary to interpret the constitutional amendment and provisions in chapter 215 in order to determine the effect of termination of the Trust Fund, that does not lead to the conclusion that their interpretation of provisions outside of chapter 106 must be given deference.
We reject appellants' argument that the trial judge ignored the clear intent behind article III, section 19(f) of the constitution, *158 and its effect on the act. The trial judge correctly gave effect to the Commission's expressed purpose of the constitutional amendment and to section 215.3206, Florida Statutes. Appellants argue that the primary purpose of terminating trust funds was to restore the legislature's control over the expenditure of funds by returning those funds to general revenue. The legislature, however, has always had the power to amend statutory provisions creating trust funds and could retain the funding sources of trust funds while changing the appropriation of the earmarked funds. We agree with the trial judge that the primary intent was to make the budget process clearer by moving the funds into general revenue where the funds could be more easily monitored and citizens could more easily understand where money for state expenditures comes from, how that money is appropriated, and what goals are being met by expenditures.
We agree with the appellees that the trial judge correctly interpreted the provision which provides that all cash balances and income of any trust funds abolished shall be deposited into general revenue as providing that all moneys or funding sources originally designated for deposit into the Trust Fund be deposited into general revenue. As noted by the Commission and as provided in section 215.32(2), a trust fund merely segregates or earmarks funds. The trial judge's interpretation is also supported by the Commission's explicit statement that "[i]t is not the Commission's intent that the purpose for which a trust fund was established be eliminated. Rather, it is the Commission's intent to provide for a more transparent budget by simply moving the funds from `trust funds' into the General Revenue Fund, where the funds can be more easily monitored." In section 215.3206(1), the legislature provided that each recommendation regarding whether a trust fund should be allowed to terminate or should be re-created shall be based on a "review of the purpose and use of the trust fund and a determination of whether the trust fund will continue to be necessary." This language can reasonably be interpreted as requiring a determination of whether the use of a trust fund is necessary to carry out the program or provisions funded by the trust fund, or whether the program or provisions can continue in the absence of the trust fund.
We also reject the appellants' argument that the trial judge's holding violates the doctrine of separation of powers. The appellants argue that under the trial judge's holding, potentially millions of dollars in public funds will be paid directly from the general revenue fund pursuant to section 106.32(1) without legislative debate or approval. The appellants contend the appropriation contained in section 106.32(1) is to the Trust Fund, and that when the Trust Fund terminated the appropriation terminated with it. The appellants ignore the fact that prior to termination of the Trust Fund, millions of dollars were paid directly from general revenue pursuant to the formula provided in chapter 106, without legislative debate or approval.[3] The trial judge's interpretation of the phrase "income of the trust fund" allows the appropriation contained in section 106.32(1) to continue to be operational.[4]
Contrary to the appellants' assertion, it does not appear that the trial judge re-wrote the laws containing trust funds or the appropriations connected therewith, but instead merely interpreted the provisions regarding termination of trust funds[5] and the effect of these provisions on the Act. The trial judge correctly concluded that the provisions in chapter 106 referring to the Trust Fund could be deleted and the remainder of the act allowed to stand.
The appellants' argument that the legislature would not have enacted the back-up appropriation from general revenue without the Trust Fund, because the legislature provided *159 that additional funds would come from general revenue only if necessary due to a shortfall in the trust fund's other revenue sources, is not persuasive. The parties stipulated that the majority of the public campaign financing funds in the 1994 election originated from general revenue.[6] Although the appellants argue that the legislature never intended to fund public campaign financing with an appropriation from general revenue in the manner established by the trial judge, the result under the trial judge's interpretation is the same as when the Trust Fund was in existence. Before and after termination of the Trust Fund, fines, penalties, voluntary contributions, and a portion of qualifying fees and assessments combine with funds from general revenue in an amount sufficient to provide matching funds to candidates.
The appellants argue that the trial judge's ruling fails to resolve a central issue in the case, because the Division cannot administer the public campaign financing program without an operational appropriation from the legislature. The appellants state that operational funding for the program always came from the Trust Fund, and that prior to termination of the Trust Fund, the Division of Elections was required to obtain specific budget authority in the Trust Fund to pay for expenses in administering the public campaign financing program. The appellants state that there is no formula in the Act, nor has the trial court established any standards or guidelines, for determining the amount of money the Division may receive from general revenue to pay for the administration of the program. Section 106.22, Florida Statutes (1995) gives the Division authority to "[e]mploy such personnel or contract for such services as are necessary to adequately carry out the intent of this chapter." Additionally, interpreting section 106.32(1) as continuing to provide a valid appropriation, the Division has the same statutory authority it has always had to obtain budget authority to pay for expenses in administering the public campaign financing program.
Finally, we reject the appellants' assertion that the 1997 Legislature, by amending the election laws to no longer require the collection of the portion of the candidate filing fees and elections assessments earmarked for the terminated Trust Fund, has now clearly spoken. The legislature amended sections 99.092, 99.093, 105.031, 106.04, 106.07, and 106.29 by deleting the provisions transferring amounts to the Trust Fund and by reducing the fee or assessment in some cases.[7] These amendments do not, however, clearly indicate that the legislature intended public campaign financing to be suspended until a specific appropriation was made. Sections 106.31 106.36 were not amended. Although the legislature amended section 106.265(2) to provide that the Comptroller rather than the Elections Commission was responsible for bringing an action to enforce a penalty,[8] section 106.265(3) which provides that any civil penalty collected shall be deposited into the Trust Fund, was not amended. Although the legislature amended sections 320.02 and 327.25,[9] the provisions allowing voluntary contributions to the Trust Fund were not amended or deleted.
Accordingly, the order on appeal is AFFIRMED.
ERVIN, J., concurs.
BENTON, J., concurs with opinion.
BENTON, Judge, concurring.
For the reasons set out in the majority opinion, the statutory demise of the Election Campaign Financing Trust Fund did not repeal the Florida Election Campaign Financing Act, §§ 106.30 et seq., Fla. Stat. (1995), or change the economics of the program established by the 1991 amendments to the Act. Ch. 91-107, § 19, at 892, Laws of Fla. Our supreme court's determination that section 106.32(1), Florida Statutes (1991), effects a valid appropriation "each year in which a general election is to be held for the election *160 of the Governor and Cabinet," § 106.32(1), Fla. Stat. (1991), dictates the result in the present case. Republican Party of Florida v. Smith, 638 So.2d 26,28 (Fla.1994) ("section 106.32(1) is simply a section that makes an appropriation").
"Section 106.32(1) was enacted in 1991, so the Legislature was not bound by the itemization requirement [adopted as article III, section 19(b) of the Florida Constitution, effective July 1, 1994.]" Smith, 638 So.2d at 28-29 (Fla.1994). The itemization requirement applies equally to appropriation bills and "substantive bills containing appropriations," Art. III, § 19(b), Fla. Const. (1994), but has no application at all to statutes already on the books.
Construing chapter 106, Florida Statutes (1995), in conjunction with other pertinent statutory provisionsbut without taking the full effect of Smith into accountthe Division's advisory opinion reaches conclusions that are "clear error or conflict with the intent of the statute." Associated Mortgage Investors v. Department of Bus. Regulation, Div. of Fla. Land Sales, Condominiums and Mobile Homes, 503 So.2d 379, 380 (Fla. 1st DCA 1987). Because "judicial adherence to the agency's view is not demanded when it is contrary to the statute's plain meaning," PAC for Equality v. Department of State, Fla. Elections Comm'n, 542 So.2d 459, 460 (Fla. 2d DCA 1989), the trial court properly concluded that it was "under no obligation to defer to the Division of Elections [Advisory] Opinion 96-03."
An opinion essentially internal to the Department of State cannot foreclose or restrict consideration of the claims, interests, or views of parties the Secretary hales into court. In the present context, the advisory opinion is nothing more than the view of one of the Secretary's subordinates, imputed to her and now asserted by her in the present litigation. Each of the other litigants (Governor, Comptroller, and House of Representatives) has pertinent constitutional or statutory responsibilities in no way inferior to those of the Secretary.
As a "declaratory statement" within the meaning of the Administrative Procedure Act, § 120.565, Fla. Stat. (Supp.1996), the advisory opinion was the product of a separate proceeding initiated by a stranger to the present litigation, without the Governor's or the Comptroller's input. Cf. Florida Ass'n of Nurse Anesthetists v. Department of Prof'l Regulation, Bd. of Dentistry, 500 So.2d 324 (Fla. 1st DCA 1986) (third party allowed to participate in proceedings on request for declaratory statement). We have for review the circuit court's judgment, not earlier action taken by an administrative agency.
In settings in which judicial deference to putative administrative expertise is appropriate, however, the fact that an administrative agency obliged to construe multiple statutes concludes, applying accepted canons of construction, that a later-enacted statute modifies or repeals outright a statute previously in effect is no reason, on judicial review of administrative action, not to give appropriate consideration to the agency's interpretation. An administrative agency has both the power and the duty, "[w]ithin its statutorily delimited sphere," Florida Dep't of Ins. and Treasurer v. Bankers Ins. Co., 694 So.2d 70, 71 (Fla. 1st DCA 1997), to acknowledge the effect of all pertinent statutes, including any repealers.
The "axiom" to which the court refers in saying that "it is axiomatic that an administrative agency has no power to declare a statute void," Palm Harbor Special Fire Control Dist. v. Kelly, 516 So.2d 249, 250 (Fla.1987), has been stated, as follows:
The Administrative Procedure Act does not purport to confer authority on administrative law judges or other executive branch officers to invalidate statutes on constitutional or any other grounds.
CWA, Local 3170 v. City of Gainesville, 697 So.2d 167,170 (Fla. 1st DCA 1997). Nothing in the majority opinion or, indeed, in Kelly should be read to suggest that an administrative agency is unable to recognize, in an appropriate case, that a later statute has modified or repealed an earlier statute.
NOTES
[1] Section 99.092, Florida Statutes (1995), provided that each person seeking to qualify for nomination to any office, except a person seeking to qualify by petition or as a write-in candidate, shall pay a filing fee in the amount of 4.5 percent of the annual salary of the office, with 1.5 percent of the annual salary transferred to the Trust Fund and the remainder distributed pursuant to section 99.103. Section 99.093, Florida Statutes (1995), provided that each person seeking to qualify for election to a municipal office shall pay an election assessment equal to 1.5 percent of the annual salary of the office sought, and that one-third of the amount collected shall be transferred to the Trust Fund. Section 105.031, Florida Statutes (1995), provided that each candidate qualifying for election to judicial office, except write-in judicial candidates, shall pay a filing fee equal to 4.5 percent of the annual salary of the office. The provision called for the entire filing fee to be deposited into the General Revenue Fund, with one-third of the filing fee subsequently transferred to the Trust Fund.

Sections 106.04 and 106.07, Florida Statutes (1995) provided that any committee of continuous existence, candidate for state office, or political committee that registered with the Division of Elections failing to file required reports on the designated due date shall be subject to a fine, which shall be deposited in the Trust Fund. Section 106.29, Florida Statutes (1995) provided that any political party failing to file a report on the designated due date shall be subject to a fine as provided in section 106.07.
[2] Sections 199.052(14), 320.02(13), 322.08(7)(a), 327.25(11), and 607.1622(1)(h), Florida Statutes (1995). These sections provide that persons paying annual intangible tax, registering a motor vehicle, applying for a driver's license, registering a boat, or filing an annual report for a corporation may make a voluntary contribution of $5.
[3] In Republican Party v. Smith, 638 So.2d 26 (Fla.1994), the supreme court found that sections 106.32(1) and 106.35 constituted the consent of the public to expend public funds and consequently constituted a valid appropriation made by law.
[4] We again note that the legislature, when faced with this issue during the 1996 session declined to re-create the Trust Fund but also declined to repeal the entire public campaign financing act.
[5] Art. III, § 19(f), Fla. Const.; § 215.3206, Fla. Stat.
[6] During the 1994 election, $7,338,000 of the $11,238,000 distributed from the Trust Fund was transferred from general revenue.
[7] 1997 Fla. Laws ch. 97-13, §§ 6, 7, 8, 11, 12, & 13.
[8] 1997 Fla. Laws ch. 97-13, § 51.
[9] 1997 Fla. Laws ch. 97-300; 97-16; 97-96.