IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

DEPARTMENT OF
EDUCATION,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

      Appellant,

CASE NO. 1D15-871

v.

EDUCATIONAL CHARTER
FOUNDATION OF FLORIDA,
INC., D/B/A IMAGINE
SCHOOLS AT SOUTH LAKE, A
FLORIDA NON-PROFIT
CORPORATION,

      Appellee.

_____/

Opinion filed November 3, 2015.

An appeal from the Circuit Court for Leon County.
George S. Reynolds, III, Judge.

Matthew H. Mears, General Counsel, and David L. Jordan, Assistant General Counsel, Tallahassee, for Appellant.

Melissa Gross-Arnold and Shawn A. Arnold of Arnold Law Firm, Jacksonville, for Appellee.


SWANSON, J.

      This is an appeal from a summary final judgment enjoining the Department

of Education from declassifying appellee as a high-performing charter school

pursuant to section 1002.331, Florida Statutes (2013). Because we conclude the trial court properly construed the applicable statutory provisions, we affirm.

Appellee filed a complaint for declaratory and injunctive relief, claiming the Department improperly sought to declassify appellee as a high-performing charter school after appellee received a school grade of "C" during the 2013-2014 school year. In its subsequent motion for summary judgment, appellee asserted the Department's declassification of appellee as a high-performing charter school for a single school grade of "C" violated subsection (4) of the statute, which did not authorize declassification unless appellee received "a school grade of 'C' or below in any two years" during the term of the school's charter. In its countermotion for summary judgment, the Department asserted that appellee's declassification was mandated under subsection (5) because appellee no longer qualified as a high-performing charter school under subsection (1), which required that appellee "[r]eceived at least two school grades of 'A' and no school grade below 'B,' . . . during each of the previous 3 school years." Taking the position that subsections (4) and (5) were "positively repugnant to each other," the Department claimed subsection (5) controlled as the last expression of legislative intent. The trial court rejected this claim and entered summary judgment for appellee. In doing so, the court found no evidence that the legislature intended to repeal subsection (4), which remained the sole mechanism for determining the loss of high-performing

2

charter school status or for the Commissioner of Education to declassify high-performing charter schools based upon school grades. This appeal followed.

Section 1002.331, Florida Statutes (2013), provides in pertinent part:

> (1) A charter school is a high-performing charter school if it:
> (a) Received at least two school grades of "A" and no school grade below "B," pursuant to s. 1008.34, during each of the previous 3 school years.
> (b) Received an unqualified opinion on each annual financial audit required under s. 218.39 in the most recent 3 fiscal years for which such audits are available.
> (c) Did not receive a financial audit that revealed one or more of the financial emergency conditions set forth in s. 218.503(1) in the most recent 3 fiscal years for which such audits are available. However, this requirement is deemed met for a charter school-in-the-workplace if there is a finding in an audit that the school has the monetary resources available to cover any reported deficiency or that the deficiency does not result in a deteriorating financial condition pursuant to s. 1002.345(1)(a) 3.
> . . . .
> (4) A high-performing charter school may not increase enrollment or expand grade levels following any school year in which it receives a school grade of "C" or below. If the charter school receives a school grade of "C" or below in any 2 years during the term of the charter awarded under subsection (2), the term of the charter may be modified by the sponsor and the charter school loses its high-performing charter school status until it regains that status under subsection (1).
> (5) The Commissioner of Education, upon request by a charter school, shall verify that the charter school meets the criteria in subsection (1) and provide a letter to the charter school and the sponsor stating that the charter school is a high-performing charter school pursuant to

3

this section. The commissioner shall annually determine whether a high-performing charter school under subsection (1) continues to meet the criteria in that subsection. Such high-performing charter school shall maintain its high-performing status unless the commissioner determines that the charter school no longer meets the criteria in subsection (1), at which time the commissioner shall send a letter providing notification of its declassification as a high-performing charter school.

(Emphasis added). The legislature first enacted section 1002.331 effective July 1, 2011. Ch. 2011-232, §§ 1 & 6, at 3450-51, 3466, Laws of Fla. The emphasized language of subsection (5) was added to the statute effective July 1, 2013. Ch. 2013-250, §§ 3 & 11, at 2859, 2867, Laws of Fla.

The trial court agreed with appellee that the Department could not declassify appellee as a high-performing charter school after receiving a school grade of "C" for a single year because declassification was not authorized under subsection (4) unless appellee received "a school grade of 'C' or below in any 2 years" during the term of the school's charter. Although the Department argued that the more recently enacted provisions in subsection (5) should control over conflicting provisions in subsection (4), the trial court concluded that both subsections could be harmonized by construing the criteria of subsection (1)(a) as applying to the initial determination of high-performing charter school status while the criteria of subsection (4) applied to loss of that status after it was granted. The issue on appeal is whether subsections (4) and (5) are so repugnant that this court should

4

defer to the Department's interpretation of the statute. This requires the consideration of several rules of statutory construction.

Generally, Florida courts will defer to an agency's interpretation of statutes that the agency is charged with implementing and enforcing. Palm Beach Cnty. Canvassing Bd. v. Harris, 772 So. 2d 1273, 1283 (Fla. 2000). However, courts are under no obligation to defer to an agency interpretation that results in a statutory provision being voided by administrative fiat. Palm Harbor Special Fire Control Dist. v. Kelly, 516 So. 2d 249, 250 (Fla. 1987). It is well settled that courts will disfavor construing a statute as repealed by implication unless that is the only reasonable interpretation. Cannella v. Auto-Owners Ins. Co., 801 So. 2d 94, 98 (Fla. 2001); Kelly, 516 So. 2d at 250. A statute should be interpreted to give effect to every clause in it and to accord meaning and harmony to all of its parts. Larimore v. State, 2 So. 3d 101, 106 (Fla. 2008); Fla. Dep't of Env't Prot. v. ContractPoint Fla. Parks, LLC, 986 So. 2d 1260, 1265 (Fla. 2008). A court cannot read a statutory subsection in isolation, but must read it within the context of the entire section in order to ascertain legislative intent for the provision. Larimore, 2 So. 3d at 114; ContractPoint, 986 So. 2d at 1265. If part of a statute appears to have a clear meaning, when considered alone, that is inconsistent with other parts of the same statute, the court will examine the entire statute in order to ascertain the overall legislative intent. Id. at 1265-66. It is the court's duty to construe two

5

apparently contradictory enactments together in harmony if by any fair, strict, or liberal construction the court can find a reasonable field of operation for both without destroying their evident intent and meaning. State ex rel. Sch. Bd. of Martin Cnty. v. Dep't of Educ., 317 So. 2d 68, 73 (Fla. 1975). There must be a hopeless inconsistency between two statutory provisions before rules of construction are applied to defeat the plain language of one of them. Knowles v. Beverly Enters.-Fla., Inc., 898 So. 2d 1, 9 (Fla. 2004).

The trial court properly applied these rules to harmonize subsections (4) and (5), which were not hopelessly inconsistent. Prior to the amendment of subsection (5), subsection (4) was the only provision governing the declassification of a high-performing charter school and contemplated that a charter school did not lose its high performing status by virtue of receiving a single school grade of "C." Although the Department claims that this changed with the amendment of subsection (5), which requires the declassification of a charter school if the Department cannot make an annual determination that the charter school "[r]eceived at least two school grades of 'A' and no school grade below 'B,' . . . during each of the previous 3 school years" pursuant to subsection (1)(a), it is undisputed that the legislature left subsection (4) unchanged. This court must presume that the legislature was aware of subsection (4) when it amended subsection (5) and did not intend to keep contradictory provisions on the books or

6

effect so important a measure as the repeal of subsection (4) without expressing an intention to do so. See Knowles, 898 So. 2d at 9. Although the Department cites legislative staff analyses in support of its position that the amendment to subsection (5) was intended to supersede subsection (4), there is nothing in those analyses to suggest that. Absent any indication of legislative intent to repeal subsection (4), the trial court properly interpreted the criteria of subsection (1)(a) as applying to the initial determination of high-performing charter school status and the criteria of subsection (4) as applying to loss of that status after it was granted. If the legislature actually intended that subsection (5) required disqualification of any high-performing charter school that received a school grade of "C" or lower in a single year, the proper remedy is with the legislature by way of repeal of subsection (4).

AFFIRMED.

LEWIS and WINOKUR, JJ., CONCUR.